**In re STAR BROADCASTING, INC.,
Sandra M. Shenfeld, Debtors.**

**Bankruptcy Nos. 86–07842, 86–07843.**

United States Bankruptcy Court,
D. New Jersey.

Jan. 22, 1988.

Cole, Schotz, Bernstein, Meisel & Forman by Gerald H. Gline, Hackensack, N.J., for debtors.

Okin, Cohen & Hollander by Paul S. Hollander, Fort Lee, N.J., for Calvary Equities, Inc.

Klehr, Harrison, Harvey, Branzburg, Ellers & Weir by Donald B. Brenner, Cherry Hill, N.J., for Fidelity Bank, N.A.

Thomas J. Subranni, Atlantic City, N.J., for the Unsecured Creditors' Committee of Star Broadcasting, Inc.

## OPINION

ROSEMARY GAMBARDELLA,
Bankruptcy Judge.

Before the court is a motion by the law firm of Cole, Schotz, Bernstein, Meisel & Forman, P.A. ("Cole, Schotz"), attorneys for Star Broadcasting, Inc. ("SBI") and Sandra M. Shenfeld ("Shenfeld"), both debtors herein, for an order declaring that the representation by Cole, Schotz of both debtors-in-possession does not represent a conflict of interest.

On December 18, 1986 Shenfeld and SBI, a corporation wholly-owned by Shenfeld, filed Chapter 11 petitions for reorganization with this court pursuant to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("Bankruptcy Code"). Upon the commencement of the Chapter 11 proceedings, each debtor filed applications for the retention of counsel. On December 23, 1986, this court entered orders approving the debtors-in-possession's retention of the law firm of Valore, McAllister, Westmoreland, Gould, Vesper & Schwartz ("Valore, McAllister") as counsel for each debtor. This court received no objection from any party regarding Shenfeld and SBI's retention of Valore, McAllister as counsel for both debtors.

On February 25, 1987, Shenfeld terminated her and SBI's employment of Valore, McAllister. On or about March 6, 1987, Shenfeld and SBI sought to retain Cole, Schotz as substitute counsel. In order to receive this court's approval of the retention of Cole, Schotz, Gerald H. Gline, Esquire, a member of that firm, submitted two petitions requesting substitution of counsel signed by Shenfeld in her own individual capacity and as president of SBI. Also submitted were the affidavits of Gerald H. Gline, Esquire, pursuant to §§ 504 and 329 of the Bankruptcy Code and Bankruptcy Rule 2016(b). These documents were forwarded to the court and simultaneously sent to Paul Hollander, Esquire, counsel to Calvary Equities, Inc. ("Calvary"), Alpha Broadcasting, Inc. ("Alpha"), George Vajda ("Vajda"), Donald Brenner, Esquire, counsel to Fidelity Bank, N.A., Thomas Subranni, Esquire, counsel for the Official Unsecured Creditors' Committee, and the United States Trustee. These documents disclosed that the firm of Cole, Schotz was being retained by both debtors-in-possession. On March 9, 1987, this court signed orders authorizing the substitution of Cole, Schotz as counsel for both debtors-in-possession.

On March 26, 1987, Shenfeld and SBI filed petitions with this court to administratively consolidate the two Chapter 11 estates. Gerald Gline, as counsel for both debtors-in-possession, submitted a certification in support of the petitions for administrative consolidation. Those certifications disclosed that Shenfeld is the sole shareholder of SBI; that Shenfeld's principal asset is the value of her stock in SBI, which includes the value of Star Broadcasting radio station in Warren County, New Jersey, and the value of its pending applications for additional FCC broadcasting licenses for radio and low-power television stations; and that the overwhelming majority of creditors, in both number and amount, overlap in these two proceedings by virtue of Shenfeld's guaranty of substantial SBI indebtedness. On April 13, 1987, this court entered orders in both the SBI and Shenfeld proceedings granting administrative consolidation.

Fidelity Bank is an alleged secured creditor of SBI by way of a promissory note dated July 30, 1985, by which SBI is indebted to Fidelity Bank in the principal amount of $260,000.00 plus interest. SBI is also

indebted to Fidelity Bank pursuant to the terms of a second promissory note dated March 18, 1986, in the principal amount of $567,737.34 plus interest. The obligations evidenced by the two promissory notes are secured by security interests in all of SBI's personal property. Shenfeld also personally guaranteed repayment of SBI's obligations to Fidelity Bank limited to the principal sum of $220,000.00 plus interest, reasonably attorney's fees and costs. The claim of Fidelity Bank is disputed by the debtors.

Calvary is the alleged holder, by assignment, of two promissory notes of SBI in the principal amounts of $250,000.00 and $200,000.00. The notes are secured by a security interest in certain specifically described equipment and all other items of personalty, tangible and intangible, which SBI acquired in connection with the operation of the radio station previously acquired from Alpha Broadcasting. Additionally, the $250,000.00 note is secured by a first mortgage against property located at Route 31 North, Washington, New Jersey. The $200,000.00 note is also subject to a personal guaranty of Shenfeld. The claims of Calvary are disputed by both debtors.

On July 31, 1987, Shenfeld and SBI filed a disclosure statement and a consolidated plan of reorganization. The plan provided for a substantive consolidation of the two Chapter 11 proceedings. Additionally, the plan provided for the sale of the Washington, New Jersey radio station, and combined treatment of the general unsecured creditors of both estates, excluding Shenfeld's alleged general unsecured claim against SBI in the amount of $338,479.20 as reflected in the amended schedules filed on behalf of SBI and Shenfeld on May 4, 1987, which claim Shenfeld proposed to waive under the plan of reorganization. On September 9, 1987, Calvary filed an objection to both debtors' disclosure statement. Paragraph 8 of the objection provides:

Creditors should also be made aware of the fact that although there are substantial claims asserted by Shenfeld against SBI and unexplained inconsistencies between SBI's amended schedules and its financial statements, both SBI and Shenfeld are being represented by the same counsel. Counsel for SBI and Shenfeld should be required to advise creditors of the possibile conflict of interest, if any, that may exist by virtue of such dual representation and the extent to which such dual representation adversely affects the independence of any advice given to either SBI or Shenfeld or their respective creditors.

(*See* Objection to Debtors' Disclosure Statement filed by Calvary Equities, Inc.). Thus, Calvary has raised the issue of Cole, Schotz' dual representation of Shenfeld and SBI. However, neither Calvary nor any other party has filed a motion requesting that Cole, Schotz be disqualified from representing both debtors based upon an alleged conflict of interest.

In response to the instant motion, Calvary, Fidelity Bank and the Unsecured Creditors' Committee of Star Broadcasting, Inc. at the hearing conducted before this court on December 21, 1987 on the motion, opposed the continued dual representation by Cole, Schotz of both debtors-in-possession, based upon actual and potential conflicts of interest between the two debtor estates.

It is the contention of Shenfeld and SBI that Cole, Schotz' representation of both debtors-in-possession is entirely appropriate and that recent references to an alleged conflict by Calvary, or any other party, constitutes eleventh hour posturing designed to divert this court's attention from legitimate concerns. Thus, Shenfeld and SBI request that this court enter an order declaring that Cole, Schotz's dual representation of SBI and Shenfeld as debtors-in-possession in their respective Chapter 11 reorganizations does not present a conflict of interest.

■ Employment of professional persons in a bankruptcy proceeding is governed by § 327(a) of the Bankruptcy Code which provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auction-

eers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). The qualification requirements of § 327 apply to both the trustee and a debtor-in-possession. *In re Roberts*, 46 B.R. 815, 821 (Bkrtcy.D.Utah 1985), *aff'd in part, rev'd and remanded in part on other grounds*, 75 B.R. 402 (D.Utah 1987). It is well settled that a debtor-in-possession has all the rights, powers, and duties of a trustee and stands in the shoes of a trustee in every way. *Id.* *See* S.Rep. No. 95–989, 95th Cong., 2nd Sess., 116 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

Thus, § 327(a) sets forth a two-part test for qualification of counsel to represent a debtor-in-possession. Counsel must "not hold or represent an interest adverse to the estate" and must be a "disinterested person." *In re O'Connor*, 52 B.R. 892, 895 (Bkrtcy.W.D.Okla.1985). Under § 101(13)(E), a disinterested person is one who:

does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or any investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(13)(E). Because of the manner in which the Code defines "disinterested person," both prongs of the test under § 327(a) are satisfied where counsel is a disinterested person. *In re Roger J. Au & Son, Inc.*, 64 B.R. 600, 604 (N.D.Ohio 1986). This is the case because a disinterested person is one who does not have an interest adverse to the interest of the estate. Additionally, "having" an interest adverse to the estate and "holding or representing" an interest adverse to the estate are identical considerations. *Id.*

Since the term "adverse interest" is not specifically defined in the Bankruptcy Code, some courts have interpreted the holding of an interest adverse to the estate to include:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Roberts, supra,* 46 B.R. at 826–27. *See also, In re Roger J. Au & Son, Inc., surpa,* 64 B.R. at 604.

To "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest. *See In re Roberts, supra,* 46 B.R. at 827.

In its discussion of the term "disinterested person" as defined in the Bankruptcy Reform Act of 1978, Collier's states the following:

The ennunciated elements provide a minimum standard for the guidance of the court in its appointments and ensure that the persons employed shall have the essential character of independence and disinterestedness which is required. These elements do not, however, establish an exclusive standard. As was the case under pre-Code bankruptcy practice (continued by virtue of the "catchall" provisions of clause (E), if a court deems a particular person's associations to be prejudicial to disinterestedness, it may reject him even though those associations do not come strictly within the purview of § 101(13). Thus, the phrase "or for any other reason" permits the court to find a particular person lacking in disinterestedness for reasons other than the non-exclusive statutory guidelines.

As noted above, clause (E) may be termed a "catchall" clause, and it seems broad enough to include anyone who in the slightest degree might have some interest or relationship that would even faintly color the independent and impartial attitude required by the Code and Bankruptcy Rules. The reasons support-

ing this extensive inclusion are the same, of course, as those previously recounted. Indirect or remote, as well as direct, associations or affiliations may engender conflicting loyalties.

. . . . .

It is clear, therefore, that the definition of disinterested person in paragraph 13 promotes the policy that as a general principle professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate which might impair the high degree of an impartiality and detached judgment expected of them during the course of administration.

*In re Philadelphia Atheletic Club, Inc.,* 20 B.R. 328, 333–34 (E.D.Pa.1982), *citing,* 1 Collier Bankruptcy Manual, Section 101.13 (1981).

In addition to the standards in Section 327(a) and case law interpreting that section, many courts have relied on the Rules of Professional Conduct for guidance in determining whether a conflict of interest exists in a law firm's representation of parties to a bankruptcy proceeding. *See, e.g., In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328 (E.D.Pa.1982); *In re Roberts,* 46 B.R. 815 (Bkrtcy.D.Utah 1985), *aff'd in part, rev'd and remanded in part on other grounds,* 75 B.R. 402 (D.Utah 1987); *In re Iorizzo,* 35 B.R. 465 (Bkrtcy.E. D.N.Y.1983); *In re Chou–Chen Chemicals, Inc.,* 31 B.R. 842 (Bkrtcy.W.D.Kty. 1983). Under General Rule 6 of the General Rules of the United States District Court for the District of New Jersey, "the Rules of Professional Conduct and the Code of Judicial Conduct of the American Bar Asso-

ciation shall govern the conduct of the judges and the members of the bar admitted to the practice in this Court." The provisions of the Local District Court General Rules govern the practice of attorneys in the Bankruptcy Court for the District of New Jersey. *See* General Statement to the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of New Jersey.

Rule 1.7 of the American Bar Association Model Rules of Professional Conduct[1] states as follows:

Rule 1.7 Conflict of Interest: General Rule

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consulation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.[2]

---

**1.** The American Bar Association Model Rules of Professional Conduct were adopted by the House of Delegates of the American Bar Association in August 1983, replacing the entire Model Code of Professional Responsibility. *See* ABA/BNA Lawyer's Manual on Professional Conduct, pp. 01:101, 01:301 (ABA/BNA 1987).

**2.** Rule 1.7 of the Rules of Professional Conduct as adopted by the Supreme Court of New Jersey states:

RPC 1.7 CONFLICT OF INTEREST: GENERAL RULE

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and

(2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.

(b) A lawyer shall not represent a client if the representation of that client may be mate-

It is under these guidelines provided by the Bankruptcy Code and the case law construing it and the Professional Rules of Conduct made applicable by General Rule 6 of the General Rules of the United States District Court for the District of New Jersey, that this court must make its determination of whether a conflict exists in the representation by Cole, Schotz of both debtors-in-possession.

In *In re Roger J. Au & Son, Inc.*, 64 B.R. 600 (N.D.Ohio 1986), the same counsel had provided legal services to the corporate debtor and to the principal of the corporate debtor who had also personally guaranteed the corporation's debts. The question before the *Au & Son* court was whether the firm in that case represented a person holding an interest that might reduce the value of the estate, that might result in a dispute with the estate, or that might cause bias against the estate. *In re Roger J. Au & Son, Inc.*, *supra*, 64 B.R. at 604. The standard is a strict one:

> As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might in the view of the trustee or the bankruptcy court effect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of the case.

*Id.*, *citing*, to Collier on Bankruptcy, Para. 327.03[3][a] at 327–13 (15th ed. 1985). *See also, In re Codesco, Inc.*, 18 B.R. 997, 999 (Bkrtcy.S.D.N.Y.1982) ("a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate

matters"). The court in *Au & Son* held that an attorney who represents a debtor-in-possession, and also represents an individual who is a potential debtor of the debtor-in-possession, represents an interest adverse to the estate and constituted an actual potential conflict that rendered the law firm "interested" parties within the scope of § 101(13)(E) and subject to disqualification pursuant to § 327(a). *In re Roger J. Au & Son, Inc.*, *supra*, 64 B.R. at 605.

■ In the instant case, Shenfeld is the sole shareholder and sole officer and director of SBI. As reflected in the Amended Schedules and Statement of Affairs filed on behalf of the debtors on May 4, 1987, Shenfeld claims to be an unsecured creditor of SBI to the extent of at least $338,479.20. Additionally, Shenfeld's unsecured claims total $717,491.37, with $630,656.00, or approximately 90%, representing her guaranty of SBI's indebtedness. In the disclosure statement and plan filed by SBI and Shenfeld, the debtors-in-possession propose that pursuant to a confirmed Chapter 11 plan Shenfeld will waive her claims against SBI for monies loaned to the corporation. Counsel for the debtors-in-possession argues that such waiver by Shenfeld would negate any possible conflict of interest by the firm since Shenfeld would no longer be a creditor of SBI. This court cannot accept such rationale. These proceedings have progressed to a point where a disclosure statement and plan have been filed by the debtors-in-possession. There is no indication, however, that such plan will be approved. Thus, this court cannot speculate as to whether Shenfeld's waiver of the

rially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) This rule shall not alter the effect of case law or ethics opinions to the effect that:

(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and

(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

claim she holds against SBI in her proposed plan will actually take place.

■ The case of *In re Hoffman*, 53 B.R. 564 (Bkrtcy.W.D.Ark.1985), is analogous to the issues in the instant case. In *Hoffman*, a law firm represented a corporate debtor-in-possession and also the only two shareholders of that corporation, who were also debtors before the bankruptcy court. Additionally, the estates of one of the principals and the corporation were indebted to each other. In holding that a conflict of interest existed in the law firm's representation of the principal and the corporation the court stated:

> Where the debtor-in-possession is a corporation, as in this case, the attorney's duties and loyalties are to the corporation and not to individual employees, officers or directors of the corporation. *In re WPMK, Inc.*, 42 B.R. 157 (Bkrtcy.D. Haw.1984).
>
> .    .    .    .    .
>
> The creditors in each case have an interest in being paid. Where one estate is indebted to the other, there exist two groups of creditors which have conflicting claims and payment for one group is necessarily at the expense of the other. If counsel were allowed to simultaneously represent both estates, it would have to function as the proponent of the plan in the corporate case and simultaneously pass on the merits of their own plan and of the repayment possibilities on behalf of the estate in the [principal's] individual case.
>
> A further illustration of the conflict is the suggestion by the debtor-in-possession in his brief that as debtor-in-possession in his individual case he would be willing to subordinate his claim in the corporate case. For this to be accomplished the creditors of the corporate estate would benefit while creditors of the individual estate would suffer detriment in the reverse degree. Thus, if the same attorney represents both estates, he is faced with the dilemma of advising his clients to choose between conflicting duties which are as president of the corporation and as a fudiciary for the individual estate.

*In re Hoffman, supra,* 53 B.R. at 565–66.

■ In the instant case, Cole, Schotz represents SBI and its 100% shareholder, Shenfeld, who are both Chapter 11 debtors before this court. Shenfeld is a guarantor of a substantial amount of SBI's obligations. SBI, on the other hand, is a purported debtor of Shenfeld. Cole, Schotz argues that 90% of Shenfeld's unsecured creditor body represents her guaranty of SBI's indebtedness, and therefore, there exists an identity of interests since the treatment of one estate's creditors would include the treatment of the other estate's creditors in a possible plan of reorganization. This argument is not persuasive. Even if this court accepts Cole, Schotz' contention that there is an overlapping of creditors in the two estates it represents, there still is at least some creditors in one estate or both that are not creditors in the other. Thus, in following the rationale of the *Hoffman* court, "where one estate is indebted to the other, there exists two groups of creditors which have conflicting claims and payment for one group is necessarily at the expense of the other. Thus, Cole, Schotz' dual representation is in direct conflict. In the first instance, if Shenfeld waives her claims against SBI, her estate is lessened in value from which her creditors may collect and SBI's estate is increased in value since they would not have to pay Shenfeld her purported claim. Conversely, if Shenfeld does not waive her claim against SBI and succeeds in collection thereof, her estate is enhanced and SBI's estate is lessened. Therefore, it is this court's determination that an actual conflict exists in Cole, Schotz' dual representation of SBI and Shenfeld. This court finds that Cole, Schotz by representing SBI as a debtor-in-possession and also representing Shenfeld, an individual who is both a debtor and creditor of SBI, represents an interest adverse to the estate and is not a disinterested person within the terms of § 101(13)(E). *See In re Roger J. Au & Son, Inc.*, 64 B.R. 600 (N.D.Ohio 1986).

In its briefs filed with this court, counsel for SBI and Shenfeld cite the cases of *In re OPM Leasing Services, Inc.*, 16 B.R. 932 (Bkrtcy.S.D.N.Y.1982) and *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160 (Bkrtcy.D.Ariz.1984) and *In re O'Connor*, 52 B.R. 892 (Bkrtcy.W.D.Okla.1985) as authority for permitting its dual representation. These cases, however, are distinguishable from the instant case.

In *OPM Leasing*, the trustee and his counsel represented five separate, but related, Chapter 11 reorganizations. A Chapter 7 trustee in a related case moved to disqualify both the trustee and his attorneys on the grounds of conflict of interest. OPM was a wholly-owned subsidiary of Cali Trading International, Ltd. Cali was a closely held corporation owned 100% by two principals on a 50–50 basis. Both of the principals of Cali filed voluntarily petitions under Chapter 7 of the Code. OPM claimed that Cali was indebted to it in excess of $134,000.00. The same trustee was appointed in both the OPM and Cali Chapter 11 proceedings. The trustee employed the same firm to represent it in both proceedings as well. The trustee of one of the principal's Chapter 7 proceedings filed an order to show cause for removal of the Chapter 11 trustee of the Cali proceeding because of an alleged conflict of interest betwen the Cali and OPM estates. The order to show cause also sought removal of the trustee's counsel from a pending adversary proceeding in which a potential recovery of property by the trustee was not clearly earmarked to either estate. With regard to the removal of the trustee, the court held that removal or disqualification was inappropriate. The court stated that:

> The realities and practicalities of bankruptcy administration in large, complex cases, such as these, makes it doubtful that a court will sever an established trusteeship over multi-related corporations in cases that are well progressed unless there is a showing of actual, present conflict incapable of any other equitable resolution, especially where, as here, full disclosure of the potential for conflict was made at the outset of appointment.

*In re OPM Leasing Services, Inc., supra*, 16 B.R. at 938. The court also refused to remove or disqualify the attorneys for the trustee in a pending adversary proceeding because the possibility that the trustee would be successful in recovering certain property was insufficient for such prophylactic action. The court stated:

> The possibility of Hassett [the Trustee] recovering the Jefferson Bank stock is also an insufficient basis for prophylactic action. Should Hassett be successful in recovering the Jefferson Bank stock and there is a genuine issue as to whether the Cali or OPM estates own the stock, the Court can be called upon to protect and allocate ownership interests amongst the competing bankruptcy estates. For that matter, "the apparent conflict of interest might be resolved in a number of ways." ... It is only at this later time [after the trustee actually recovered the property] that the alleged conflict will reveal itself as real or merely apparent and imaginary. To act earlier in a preemptive manner would result in confusion and interruption of the orderly administration of the OPM and Cali bankruptcy proceedings and cause them to incur unnecessary great expense.

*In re OPM Leasing Services, Inc., supra*, 16 B.R. at 939. (citations omitted). Thus, Judge Burton F. Lifland, presiding in the *OPM* case, was concerned with disrupting the complicated proceedings involving multi-business entities which were owned by a single entity. Disrupting the proceedings by disqualifying counsel would have created unreasonable delay and expenses in the opinion of the *OPM* court. Such a situation simply is not present in the instant case. The conflict between Shenfeld and SBI is clearly apparent and the separation of their distinct interest is easily ascertainable.

In the *Guy Apple* case, the same law firm represented Guy Apple in Chapter 11 proceedings and one of its debtors in another Chapter 11 proceeding. The court held that a conflict of interest existed, however the court's concern focused on whether that conflict was actually materially ad-

verse to the estate, creditors, or equity security holders. *See In re Guy Apple Masonry Contractor, Inc., supra,* 45 B.R. at 166. The court found that the firm's representation of both debtors was not materially adverse to the estates stating:

> The court simply finds that at this late stage continued representation of the debtor by present counsel would be in the best interest of the estate. The major issues remaining to be resolved relate to the amount and priority of various claims from debtor's attempted rejection of a collective bargaining agreement. Present counsel is intimately familiar with these issues and the background necessary to debtor's effective assertion of its position. It would be both counterproductive and unduly expensive at this point to require new counsel to become familiar with these files. The court notes that the Fund [a creditor] has not moved for disqualification of counsel but has simply urged that compensation be denied.

*In re Guy Apple Masonry Contractor, Inc., supra,* 45 B.R. at 167. Thus, as in *OPM Leasing,* the court in *Guy Apple* was more concerned with the effects of disqualification on the estate given the facts of those cases.

In the case *In re O'Connor,* 52 B.R. 892 (Bkrtcy.W.D.Okla.1985), the same law firm represented both a corporate Chapter 11 debtor and its principal shareholder and president in his Chapter 11 proceedings. The firm itself filed an application to withdraw as counsel in either one or both Chapter 11 proceedings. A creditor of the estates, Wells Fargo Bank, filed a response to the firm's application in which it fully supported counsel's request to withdraw from its representation. Subsequently, Wells Fargo filed a motion affirmatively requesting that counsel be disqualified from its representation of the corporate debtor.

The court held that counsel did not hold or represent an interest adverse to the estate and that counsel was disinterested party under § 101(13). Wells Fargo's objection to counsel's dual representation of the corporate debtor and the principal shareholder focused on several issues. Wells Fargo argued that the shareholder and director of the corporate debtor was inherently biased towards remaining as a salaried employee of the corporation because of the large salary he draws in his capacity as officer, director and employee of the corporate debtor. The court stated that the solution to this situation lies not in the disqualification of counsel from its representation of the corporate debtor, but rather, it lies with reliance on other sections of the Bankruptcy Code. *In re O'Connor, supra,* 52 B.R. at 896. Wells Fargo also argued that an inherent bias existed with respect to the formulation of a plan of reorganization for the corporate debtor wherein the equity security holders, the principal director which the firm represents, are treated preferentially, thereby concomitantly enchancing the success of the individual shareholders' reorganization. The court stated that while it did not doubt that the shareholders would enjoy seeing a corporate plan of reorganization which maximizes the potential for return in favor of the equity security holders, to imply that the reorganization efforts of the corporate debtor would be channelled in favor of equity security holders to the exclusions of all other creditors ignores the practical reality of § 1129(b), which sets forth the standards by which a plan of reorganization may be confirmed notwithstanding the failure of an impaired class to accept the plan. *In re O'Connor, supra,* 52 B.R. at 896. Thus, these concerns of Wells Fargo in its objections to the firm's representations of both debtors was left to other sections of the Bankruptcy Code by the *O'Connor* court.

Finally, Wells Fargo urged that since the shareholder/director occupied the status of debtor of the corporate debtor, such fact alone demonstrated adversity of interest. The *O'Connor* court held that under § 327(c), as amended by the Bankruptcy Amendments and Federal Judgeship Act of

1984,[3]

    Clearly counsel may represent Magic Circle [the corporate debtor] in its capacity as creditor of the O'Connors [shareholders/principals], provided there is no objection by another creditor in which case the court will need to determine that such representation involves an actual, rather than theoretical, conflict of interest. Given Wells Fargo's objection we would normally need inquire into the existence of an actual conflict of interest. We need not do so however, albeit our previous discussion leaves us with no doubt on the issue, due to the separate representation of Magic Circle [the corporate debtor] in its claim against the O'Connors [shareholders/principals].

*In re O'Connor, supra,* 52 B.R. at 897. Thus, counsel for both debtors-in-possession was entitled to represent the corporate debtor as a creditor of the stockholder/principal's estate because it took a precautionary step of requiring that the corporate debtor retain separate representation in regard to its claim against the shareholder/director.

In *O'Connor,* counsel's dual representation was negated, in the *O'Connor* court's opinion, because special counsel was appointed to deal with the corporate debtor's claim against the shareholders' estate.

This court recognizes that it would be unreasonable and unnecessarily cumbersome to always require different counsel in related Chapter 11 cases, however, whether such an actual disqualifying conflict exists must be considered in light of the particular facts of each case. *See In re Hoffman, supra,* 53 B.R. at 566. Under the circumstances of this case, this court finds that an actual conflict of interest exists, and that Cole, Schotz cannnot represent both the estate of Shenfeld and the estate of SBI.

**3.** Amended § 327(c) states:
    In a case under Chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.
11 U.S.C. § 327(c) (as amended).

Thus, Cole, Schotz is granted twenty (20) days from the entry of this Order in which to elect which of the two Chapter 11 estates they will continue to represent. *See, In re Hoffman, supra,* 53 B.R. at 566. The debtor-in-possession in the remaining estate shall promptly obtain substitute counsel.

An appropriate order shall be submitted by counsel in conformance with this Opinion.

Section 327(c) prior to the 1984 amendment stated:
    In a case under Chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent in connection with the case, a creditor.