**In re Chile B. LEE, and Hae Sook Lee, Debtors.**

**Bankruptcy No. LA 88–17899 SB.**

United States Bankruptcy Court, C.D. California.

Nov. 22, 1988.
As Amended Feb. 8, 1989.

Jang W. Lee, Los Angeles, Cal., for applicant Lee, Scott & Young.

## AMENDED OPINION DENYING APPOINTMENT OF COUNSEL

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. FACTS

Debtors Chile B. Lee and Hae Sook Lee filed this voluntary Chapter 11 bankruptcy case on August 23, 1988. They are apparently the sole shareholders of Seoul Corporation, whose Chapter 11 bankruptcy case was filed in this Court on August 16, 1988. Seoul Corporation is engaged in the sale of general merchandise and costume jewelry at wholesale. Chile Lee is the president and Hae Sook Lee is the secretary of Seoul Corporation. Presumably the debtors are also the only directors of Seoul Corporation, although this is not disclosed in the papers filed with the Court. Both of the petitions were signed by Jang W. Lee, as counsel for debtors.

A brief review of the schedules filed by the Lees and Seoul Corporation discloses that there is a substantial overlap of creditors for the individuals and for the corporation. However, it appears that a number of creditors are not shared.

The debtors in each case have filed an application for the appointment of the law firm Lee, Scott & Young ("LSY"), in which Jang W. Lee is a partner, as general counsel for the debtors, pursuant to Bankruptcy Code § 327, 11 U.S.C. § 327 (1979 & Supp. 1988).

Jang W. Lee states that he has received a retainer of $2,500 to represent Chile B. Lee and his wife in this case, and that he has received no retainer for representing Seoul Corporation. However, the retainer is not disclosed in the employment application in this case.

The employment applications also make no disclosure whatever of the relationship between these two cases, or that LSY is seeking employment in both of them, notwithstanding the conflicts that such employment could raise. The declaration of Jang W. Lee in the employment application in each case states:

1. To the best of my knowledge, I am not connected with the debtors, their creditors, or any other party in interest except that I am the attorney for the debtors in this Chapter 11 case....

2. No member or associate of this law firm represents any interest in this estate, adverse or otherwise, except the interest of the applicants.

The parallel applications for appointment as legal counsel came to the Court's attention because they arrived in chambers and were reviewed on the same day. If this had not occurred, the problem would likely not have come to the Court's attention.

After noting the similar employment applications in the two cases, the Court obtained and reviewed the respective bankruptcy case files and thus learned of the conflicting interests that LSY seeks to represent. The Court then issued an order to show cause why LSY should not be disqualified in both cases because of its failure to disclose the parallel employment applications. In response to the order to show cause, LSY disclosed for the first time its retainer in this case.

## II. ANALYSIS

This is not an isolated instance of a potential conflict in interest by prospective counsel for related debtors. This Court has received similar applications for appointment as counsel for related debtors from many law firms in Los Angeles that represent bankruptcy debtors.

The failure to disclose the potential conflict is also not an isolated instance. In this Court's experience, prospective counsel infrequently discloses that appointment is sought in a related case.

This is also not an isolated instance of the failure to disclose in an employment application the amount or source of a retainer. Many applications for employment do not disclose the receipt of a retainer, and few disclose the source of such funds. However, the Court has reason to believe that retainers are quite common in bankruptcy cases in this district.

## A. *Retainer*

 The obligation to disclose a retainer is based on Bankruptcy Rule 2014(a), which requires an application for employment to state:

> [T]he specific facts showing the necessity for the employment, the name of the person to be employed, the reason for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

The application in this case clearly does not comply with Rule 2014, because it does not disclose the retainer of $2,500. Thus it fails to set forth part of applicant's proposed arrangement for compensation.

 The requirement to disclose "any proposed arrangement for compensation" includes a requirement to disclose any retainer received by or promised to the applicant. In *In re Arlan's Department Stores, Inc.*, 615 F.2d 925, 935–36, 938 (2d Cir.1979), the Second Circuit held that General Order 44, the second generation ancestor of Rule 2014,[1] required the disclosure of a $125,000 retainer paid to counsel for the debtor. Although General Order 44 lacked any language requiring the disclosure of "any proposed arrangement for compensation", the Court found that such disclosure was required as part of the law firm's "connections with the debtor", for which disclosure was (and remains) required.

The language requiring the disclosure of "any proposed arrangement for compensation" was added to Rule 2014(a) to make explicit the disclosure requirement that the Second Circuit found under General Order

44. An employment application must include a statement of all payments already received or promised and the source of the payments.

LSY's application is totally silent as to the retainer agreement. Thus it fails altogether to make the required disclosure. The retainer agreement was disclosed only in response to the order to show cause.

## B. *Parallel Employment Applications*

LSY's parallel employment applications in this case and in the Seoul Corporation case raise two problems. First, the failure to disclose the parallel applications is a violation of Rule 2014(a). Second, appointment of LSY in both cases would result in its representation of conflicting interests, which is prohibited.

### 1. Non–Disclosure

 LSY's failure to disclose its application to represent Seoul Corporation is also a violation of Rule 2014(a). Rule 2014(a) requires the disclosure in an application for employment of "all the [applicant's] connections with ... any other party in interest...." Disclosure is required of any application to represent more than one related party, including the representation of debtors in related cases. All facts that may be relevant to a determination of whether an attorney is disinterested or holds or represents an interest adverse to the debtor's estate must be disclosed. *See, e.g., Diamond Lumber v. Unsecured Creditors' Committee*, 88 B.R. 773, 777 (N.D. Tex.1988); *In re Roberts*, 75 B.R. 402, 411 (D.Utah 1987). The purpose of such disclosure is to permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment. This decision should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment.

---

**1.** General Order 44 was superseded by Bankruptcy Rule 215 in 1973, when the first set of bankruptcy rules took effect. Rule 215 was superseded in turn by Rule 2014 in 1983, when the present bankruptcy rules took effect.

It appears to the Court that such nondisclosure usually results from an intentional effort to prevent the Court from noticing that counsel is seeking appointment in related cases that may raise conflicts of interest. Thus in most if not all such cases the deception is deliberate.

■ The failure to disclose the employment application in a related case is alone a sufficient basis for disqualifying counsel in both cases. *See, e.g., Diamond Lumber, supra,* 88 B.R. at 777; *In re Roberts, supra,* 75 B.R. at 412 (Bankr.D.Utah 1988). While the Court does not impose total disqualification in this case, it will not hesitate to disqualify counsel in the future in all related cases, or to impose other appropriate sanctions, for similar nondisclosure.

### 2. LSY's Adverse Interests

LSY does not meet the requirements of Bankruptcy Code § 327(a), 11 U.S.C. § 327(a) (1979), for the appointment of attorneys in both of these cases. Section 327(a) authorizes a trustee to employ "one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons ..." Section 1107(a) gives a debtor in possession the rights and powers of a trustee (with certain exceptions not material here), including the power to employ attorneys.

Section 327 requires the application of a two-pronged test for the employment of professional persons. A debtor in possession or trustee may employ attorneys with court approval only if (1) they do not hold or represent an interest adverse to the estate, and (2) they are disinterested persons. *See e.g., Diamond Lumber, supra,* 88 B.R. at 776; *In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr.D.N.J.1988). Both prongs of this test must be met. LSY fails to meet the first of these requirements.

The term "adverse interest" is not specifically defined in the Bankruptcy Code. The reported cases have defined what it means to hold an adverse interest as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate.

*See, e.g., In re Glenn Electric Sales Corp.,* 89 B.R. 410, 413 (Bankr.D.N.J.1988); *Star Broadcasting, supra,* 81 B.R. at 838; *In re Roberts,* 46 B.R. 815, 826–27 (Bankr.Utah 1985), *aff'd in relevant part,* 75 B.R. 402 (D.Utah 1987). To "represent an adverse interest" means to serve as agent or attorney for entities holding such adverse interests. *Star Broadcasting, supra,* 81 B.R. at 838; *In re Roberts, supra,* 46 B.R. at 827.

Several reported opinions have disqualified a law firm that has represented both a corporate debtor and a shareholder. *See, e.g., Parker v. Frazier (In re Freedom Solar Center),* 776 F.2d 14, 17 (1st Cir. 1985); *Star Broadcasting, supra; Roger J. Au & Sons v. Aetna Insurance Co. (In re Roger J. Au),* 64 B.R. 600 (N.D.Ohio 1986). In addition, courts have denied fees because of conflicts resulting from the representation of a corporate debtor and its shareholders. *See, e.g., In re Roberts,* 75 B.R. 402, 410; *In re Chou–Chen Chemicals, Inc.,* 31 B.R. 842 (Bankr.W.D.Ky. 1983). If there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification. *See, e.g., In re Michigan General Corp.,* 78 B.R. 479, 484 (Bankr.N.D.Tex.1987), *aff'd in relevant part sub nom. Diamond Lumber v. Unsecured Creditors' Committee,* 88 B.R. 773 (N.D.Tex.1988); *In re Johore Investment Co. (U.S.A.),* 49 B.R. 710, 713 (Bankr.D.Ha.1985). Negligence does not excuse the failure to disclose a possible conflict of interest. *Michigan General, supra,* 78 B.R. at 482; *In re Coastal Equities,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984).

■ In addition, the representation of conflicting interests is prohibited by Rule 5–102(B) of the California Rules of Professional Conduct, which provides, "A member of the State Bar shall not represent conflicting interests, except upon the written

consent of all parties concerned." This rule applies to LSY by virtue of Local Bankruptcy Rule 102(5), which incorporates by reference Local District Court Rule 2.5, which provides:

2.5.1 Rules of Professional Conduct of the State Bar of California—State Bar Act. Each attorney shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto. Those statutes, rules and decisions are hereby adopted as the standards of professional conduct of this Court.

2.5.2 Other Standards. No attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein.

The purpose of the rules, mandating that counsel be disinterested and prohibiting the holding or representation of conflicting interests, is to assure that counsel devote undivided loyalty to the debtor. *See* comment to Rule 1.7, ABA Model Rules of Professional Conduct. Conflicting loyalties produce inadequate representation, which threatens the interests of both the debtor and the creditors, and compromises the ability of the court to mete out justice in the case. The unsanctioned representation of conflicting interests is one of the most serious sins that a lawyer can commit.

■ Seoul Corporation has an interest adverse to the estate of the debtors in this case because, according to the schedules filed in the respective cases, there is joint liability on many of the debts owing by the respective estates. Thus it is in the interest of Seoul Corporation, as debtor in possession, to have these debts paid by the estate of the Lees. In contrast, it is in the interest of the debtors in this case to have

Seoul Corporation's estate pay these debts. If LSY is appointed to represent the debtors in both cases, it will be representing these conflicting interests. *Accord, In re Star Broadcasting, Inc.*, 81 B.R. 835, 841 (Bankr.D.N.J.1988); *Roger J. Au & Son, Inc. v. Aetna Insurance Co. (In re Roger J. Au & Son, Inc.)*, 64 B.R. 600 (N.D.Ohio 1986). Indeed, this is a typical case of the representation of adverse interests that is prohibited by section 327(a). *See, e.g., Andrew v. Coopersmith (In re Downtown Investment Club III)*, 89 B.R. 59, 65 (Bankr. 9th Cir.1988) (representation of general partner and limited partnership).

Thus this is not a case where the dual representation raises only a potential for conflicting interests. In this case the interests of Seoul Corporation and the Lees, as debtors in possession in their respective cases, are in actual conflict. Representation of both estates by the law firm would involve it in the representation of actual conflicting interests. *Star Broadcasting, Inc., supra*, 81 B.R. at 841. This is specifically prohibited by section 327(a).

3. Counsel's Response

Jang W. Lee contends that the representation of the debtors in the two cases does not involve the representation of conflicting interests, because Seoul Corporation is not a creditor of Chile B. Lee, and Lee is willing to waive any claims he has against the corporation. In support of his position, he relies on *In re O'Connor*, 52 B.R. 892 (Bankr.W.D.Okla.1985). This response is inadequate in several respects.

■ First, Chile B. Lee does not have the power unilaterally to waive a claim of his estate against the corporation. The filing of a bankruptcy case creates an estate, which includes all legal and equitable interests of the debtor in property as of the commencement of the case. Bankruptcy Code § 541, 11 U.S.C. § 541 (1979 & Supp. 1988).[2] This property includes all causes of

2. Section 541 provides in relevant part:
 (a) The commencement of a [bankruptcy] case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

 (1) All legal or equitable interests of the debtor in property as of the commencement of the case.

action that belong to the debtor on the date of filing. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6323–24; S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868. Thus any claim available to Chile B. Lee against the Seoul Corporation belongs to his estate, and presumptively to his creditors. As a debtor in possession he has a fiduciary duty to assert any such claim on their behalf. The filing of the bankruptcy case terminated his power unilaterally to waive claims, including any claims that he may have against Seoul Corporation.

■ Second, it is too early to determine whether Seoul Corporation has any claim against Chile B. Lee, its shareholder and president (and presumably also a director). Careful scrutiny of Chile B. Lee's actions as a shareholder, director and officer is necessary before such a determination can be made. The financial status of the corporation makes it quite likely that such a claim may be available to the corporation.

■ Third, inter-debtor claims are not the only grounds for conflicts of interest. Substantive consolidation, for example, which is a possibility in this case, is another issue where the lack of separate counsel for related debtors may cause substantial harm because of conflicts of interest. *See, Gill v. Pacific Construction, Inc. (In re Parkway Calabasas, Ltd.),* 89 B.R. 832, 834 n. 3 (Bankr.C.D.Cal.1988). LSY simply ignores the many other ways in which conflicting interests may arise, including those in this case, that preclude multiple representation.

■ Fourth, and most important, counsel in *O'Connor* disclosed the potential conflict. In contrast, in this case LSY has been dishonest and has hidden the conflict from the Court. This fact alone justifies the disqualification of LSY as counsel in both cases.

In addition, *O'Connor* provides no support for LSY's position. The court in *O'Connor* permitted counsel to represent both a corporation and its shareholder in parallel bankruptcy cases. However, the court found that, unlike this case, there were no actual conflicts of interest between the debtors. Furthermore, the court in *O'Connor* clearly stated, "Disqualification should be mandated when an actual, as opposed to hypothetical or theoretical, conflict is present." *Id.,* at 897. The court added, "This in no way precludes disqualification for a potential conflict" (emphasis in original). *Id.* To assure the avoidance of conflicts of interest in *O'Connor,* the court appointed separate special counsel to handle inter-debtor claims. No such provision is available in this case to deal with the actual conflicts.

■ LSY also pleads that the debtors in these two cases cannot afford separate counsel. This rationale has often been used in the past to justify the appointment of counsel to represent related debtors. However, lack of financial resources is no justification for representing conflicting interests.

■ Lack of financial resources is often a reason for waiving a conflict of interest. Rule 5–102 permits an attorney to represent conflicting interests upon the written consent of all parties concerned. An attorney who desires to represent a debtor in possession and a conflicting interest must obtain a written waiver from the debtor, all creditors and the United States trustee. No such waiver has been offered in this case.

### C. *Remedy*

■ As a penalty for the representation of conflicting interests, the Court has the power to reduce the compensation awarded to professionals, or to deny it altogether. *See, e.g., Diamond Lumber v. Unsecured Creditors' Committee,* 88 B.R. 773, 776 (N.D.Tex.1988); *In re McKinney Ranch Associates,* 62 B.R. 249 (Bankr.C.D. Cal.1986). However, this does not solve the problem of the inadequate representation of parties with differing interests. It is also not fair to the professionals or to the estates to appoint them in circumstances where the diligent prosecution of their duties will embroil them in such conflicts

and expose them to a loss of fees. It appears to the Court that the best solution to this problem is is to nip it in the bud, if possible, at the outset of a case, when the professionals are appointed. *Accord, In re Roberts*, 75 B.R. 402, 406 (D.Utah 1987).

■ Accordingly, this Court adopts a presumption for two or more related cases, that it is improper to appoint (1) a single trustee, (2) a single creditors' committee, or (3) the same counsel for the trustees, for the creditors' committee or for the debtors in possession under any of the following circumstances:

(a) Where creditors of the debtors have dealt with such debtors as an economic unit (which may be reflected in guaranties and subordination agreements);

(b) Where there is a substantial overlap of creditors;

(c) Where the affairs of the respective debtors (as reflected in inter-debtor accounts, jointly owned assets, guarantees, subordination agreements, or shared officers, directors or owners) appear to be substantially entangled;

(d) Where assets have been transferred from one debtor to another in transactions that are not at arms length;

(e) Where piercing of the corporate veil of one of the debtors is necessary or advisable to protect the rights of creditors of another debtor.

*Cf. Gill v. Sierra Pacific Construction (In re Parkway Calabasas, Ltd.)*, 89 B.R. 832, 835 n. 3 (Bankr.C.D.Cal.1988).

■ Professionals seeking appointment under section 327 are required to disclose any such factors in their applications for appointment. Any professional seeking to rebut the presumption may do so only at a hearing on notice to all creditors in each of the related cases, at which time the professional must show the propriety of his or her appointment in more than one of the related cases. The notice must be adequate to inform all creditors that the appointment may result in conflicts of interest and a lack of adequate representation of the interests of the respective bodies of creditors. *In re Glenn Electric Sales Corp.*, 89 Bankr. 410, 418 (Bankr.D. N.J.1988).

### IV. CONCLUSION

■ The Court has the power to disqualify counsel in both of these cases, on each of the following grounds: (1) failure to disclose the retainer; (2) failure to disclose the parallel employment applications; (3) the attempt to represent debtors with interests in actual conflict. However, because the transgressions in this case are commonly shared by the bar in this district, the Court declines to impose this drastic remedy on LSY. Instead, the Court exercises its discretion in this case to deny appointment in one case, and to permit LSY to represent the other debtor. However, the Court will not hesitate to impose stiffer sanctions in the future for the violation of these standards.

Counsel has informed the Court that LSY prefers that employment be authorized in the Seoul Corporation case, if it is not authorized for both cases. The Court will so order.