In re AL GELATO CONTINENTAL DESSERTS, INC., Debtor.

Bankruptcy No. 88 B 15051.

United States Bankruptcy Court, N.D. Illinois, E.D.

March 17, 1989.

---

Dannen, Crane, Heyman & Simon, Chicago, Ill., for debtor.

Joseph Marconi, Rockford, Ill., for creditors.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This case is before the court on the motion of Richard Karbowski, Clare Karbowski, and Joseph Lisuzzo to disqualify the law firm of Dannen, Crane, Heyman & Simon from representing the debtor in possession in this case and to order the firm to return its retainer. For the reasons stated below, the motion to disqualify is granted,

and a sanction will be imposed, but counsel will not be required to return its retainer.

## Findings of Fact

The debtor in this case, Al Gelato Continental Desserts, Inc. ("Al Gelato"), is a corporation engaged in the manufacture and sale of Italian ice cream. Prior to February 17, 1984, Richard Karbowski, Clare Karbowski, and Joseph Lisuzzo ("the Karbowskis") owned all of the stock of Al Gelato and conducted its operations. However, on that date, the Karbowskis agreed to sell their business, through a stock transfer, to a holding company named Winter & Lepp, Inc. ("Winter & Lepp"). Michael Winter, the president and treasurer of Winter & Lepp, owns 70% of its issued and outstanding stock. Since the time of the sale, Michael Winter has also been the president and treasurer of Al Gelato, and has managed its business.

In order to secure a $471,750.00 promissory note that was part of the consideration for the sale, Winter & Lepp and Al Gelato both granted the Karbowskis a security interest in their general intangibles, securities, inventory, furniture, fixtures, equipment, parts, supplies, and vehicles. In addition, under its new management, Al Gelato borrowed funds from Midwest Bank & Trust Company ("the Bank"). In connection with this borrowing, Al Gelato entered into another broad security agreement, and Michael Winter provided a personal guarantee.[1]

On October 3, 1988, about four and a half years after the sale, Al Gelato, Winter & Lepp, and Michael Winter all filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (Title 11, U.S.C., "the Code"). Each petition was filed by the law firm of Dannen, Crane, Heyman & Simon ("Dannen, Crane").

According to the schedules and statement filed by Al Gelato, Michael Winter is its largest unsecured creditor, holding an unsecured claim without priority in the amount of $426,049.00. This claim com-

---

1. The agreement granted the Bank a security interest in "all equipment, machinery, apparatus, fixtures, furniture, furnishings (and all parts and accessories therefor and accessions thereto) and other goods of whatsoever kind, nature or description, used or usable in Al Gelato's business, general intangibles, inventory, and proceeds of any of the foregoing."

prises 81.59% of total unsecured claims without priority.[2] Winter's petition discloses that the largest claim against him ($44,912.00) is based on his personal guaranty of the loan made to Al Gelato by the Bank.

On October 7, 1988, Dannen, Crane filed virtually identical applications for approval of its retention as attorneys for each of the three debtors in possession. Each application contained the following statement (¶ 5):

> [T]o the best of the knowledge of the Debtor/Debtor-in-Possession, said attorneys [Dannen, Crane] do not hold any interest adverse to the Debtor/Debtor-in-Possession or to the estate in the matters upon which they are to be engaged herein....

In apparent compliance with Bankruptcy Rule 2014(a), each application was accompanied by the verified statements of two Dannen, Crane attorneys, stating that neither they nor their firm held any interest adverse to the estate of the debtor in possession and that they knew of no conflict of interest between themselves or their firm and the debtor in possession. No objections to the applications for employment were raised and orders authorizing the employment of Dannen, Crane were entered in all three cases.

The court was first apprised of a possible conflict of interest in Dannen, Crane's simultaneous representation of the three debtors in possession on November 16, 1988, when the Karbowskis filed their pending motion. The motion alleges that the interests of the management of Al Gelato—including Michael Winter—conflict with those of Al Gelato as debtor in possession, and that Dannen, Crane failed to disclose to the court that it thus represents interests adverse to the Al Gelato estate in violation of 11 U.S.C. § 327(a). The Karbowskis accordingly sought the disqualification of Dannen, Crane and return of its retainers. After receiving conflicting authority from the parties and hearing argument, the court took the motion under advisement.

Conclusions of Law

This is a proceeding involving matters concerning the administration of the estate, which are within the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(A). *See In re Michigan General Corp.*, 77 B.R. 97, 100 (Bankr.N.D.Tex. 1987).

■ Under § 1107(a) of the Code, a debtor in possession has all of the rights (other than the right to compensation) of a Chapter 11 trustee, "subject to any limitations" imposed on such a trustee.[3] One of the rights of a Chapter 11 trustee is that of retaining professionals, such as attorneys, subject to court approval. However, this right, accorded by § 327(a) of the Code, is subject to a two-prong limitation: (1) that the professionals to be employed "not hold or represent an interest adverse to the estate," and (2) that they be "disinterested persons."[4] That this limitation applies to the retention of professionals by debtors in possession is emphasized by § 1107(b), which provides that, "notwithstanding section 327(a)," a professional is not disqualified from employment by a debtor in possession "solely because of such person's employment by or representation of the

---

2. The total amount of debt listed in Al Gelato's schedules, including a disputed debt owed to the Karbowskis, is $969,584.46. Winter's combined claims comprise 44.15% of this total. The total property value listed in the schedules is $202,-350.03.

3. Section 1107(a) provides:
Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except

duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

4. Section 327(a) provides:
Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

debtor before the commencement of the case." This exception would be unnecessary if § 327(a) were not applicable to debtors in possession. Cases holding that the limitations of § 327(a) are applicable to retention of professionals by debtors in possession include *In re Pierce*, 809 F.2d 1356, 1362 (8th Cir.1987); *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr.D.N.J. 1988); and *In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 330–31 (Bankr.N.D.Ohio 1984).

In the present case the first prong of the § 327(a) limitation is dispositive. Does Dannen, Crane, by representing Michael Winter—a major creditor of Al Gelato—in his individual bankruptcy, "represent an interest adverse to the estate" of Al Gelato? If so, its representation of Al Gelato, as debtor in possession, is proscribed.

It has reasonably been held that to "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest. *In re Roberts*, 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd in part, rev'd and remanded in part on other grounds*, 75 B.R. 402 (D.Utah 1987); *Star Broadcasting*, 81 B.R. at 838. And, although not defined in the Code, many courts have adopted the interpretation initially announced by the *Roberts* court, that to "hold an interest adverse to the estate" means:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Roberts*, 46 B.R. 815, 827 (Bankr.D. Utah 1985). *See In re Roger J. Au & Son, Inc.*, 64 B.R. 600, 604 (N.D.Ohio 1986); *In re Lee*, 94 B.R. 172, 177 (Bankr.C.D.Cal. 1988); *In re Glenn Electric Sales Corp.*, 89 B.R. 410, 413 (Bankr.D.N.J.1988); *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr.D.N.J.1988); *In re Hoffman*, 53 B.R. 564, 565 (Bankr.W.D.Ark.1985); *In re O'Connor*, 52 B.R. 892, 896 (Bankr.W.D. Okla.1985).

With this understanding of the statute, it is patent that Dannen, Crane does represent an interest adverse to the estate. Michael Winter holds an interest (his claim) that would tend to lessen, substantially, the value of the Al Gelato estate, and Dannen, Crane represents him. Furthermore, Michael Winter has an interest in *supporting* the secured claims of the Bank against the Al Gelato estate, since Winter may be personally liable on his guarantee to the extent that the Bank is not paid by the Al Gelato estate. Accordingly, Dannen, Crane may not represent Al Gelato without violating §§ 327(a) and 1107(b). This conclusion is supported by substantial authority disapproving simultaneous representation of related debtors holding claims against one another. *E.g. In re Lee*, 94 B.R. 172 (Bankr.C.D.Cal.1988); *In re Star Broadcasting, Inc.*, 81 B.R. 835 (Bankr.D.N.J. 1988); *Roger J. Au & Son, Inc. v. Aetna Insurance Co. (In re Roger J. Au & Son, Inc.)*, 64 B.R. 600 (N.D.Ohio 1986).

Dannen, Crane attempts to avoid the conclusion by arguing (1) that its simultaneous representation of Michael Winter and Al Gelato involves at most, a "potential" rather than actual conflict, and (2) that any conflict is not "material."

The principal authority cited by Dannen, Crane in support of its potential/actual distinction is *In re Central Ice Cream Co.*, 59 B.R. 476 (Bankr.N.D.Ill.1985), a decision by Judge Jack B. Schmetterer. *Central* does note a distinction between potential and actual conflicts. The case involved a situation in which special litigation counsel pursued claims against MacDonald's Corporation on behalf of both a Chapter 11 trustee and management of the debtor. This is not a situation in which one represented party had a claim against the other. To the contrary, the two clients had a common interest in pursuing their related claims, and even when settlement discussions were pursued on behalf of both clients, Judge Schmetterer found that counsel had only "laid the egg of potential conflict of interest." 59 B.R. at 489. However, when MacDonald's offered to settle only with the trustee, and not with management of the

debtor, Judge Schmetterer held that counsel could not continue to represent both interests, since now the benefit of one might be to the detriment of the other. When counsel attempted to obtain part of the proffered settlement funds for management, Judge Schmetterer found the "[t]he egg of potential conflict thereupon hatched into actual, plain, and obvious conflict," *id.,* and imposed sanctions to remedy the harm caused by the conflicting representation, 59 B.R. at 490. The conflict in the present case is no less palpable. Just as counsel in *Central Ice Cream* could not bargain for consideration for one party without reducing the consideration that might be obtained for the other, so Dannen, Crane, in the present case, cannot advise the estate to contest its largest unsecured claim without undermining the interest of its other client, Michael Winter.

*In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160 (Bankr.D.Ariz.1984), is relied on by Dannen, Crane to support its argument that any conflict in the present case is immaterial. 45 B.R. at 166. In *Guy Apple,* as in the present case, counsel represented both the debtor in possession and a related entity—in this case one *against* which the debtor had a substantial claim. Contrary to Dannen, Crane's first argument, the court did not find this conflict merely "potential"; to the contrary, the court specifically found that "the intercompany unsecured and administrative claims create actual conflicts of interest." 45 B.R. at 166. However, the court found that these conflicts created no materially adverse consequences for the estate, for a number of reasons. The "most compelling," however, was that the debtor had "proposed a plan calling for 100% payment of all creditors." 45 B.R. at 167. To underscore the importance it attached to this factor, the court declined to award further fees to counsel until after the plan was confirmed. 45 B.R. at 169. If it is possible to make exceptions to the requirements of § 327(a) for "non-harmful" representation of adverse interests, it may be that *Guy Apple* was an appropriate case for the application of the exception—an estate is at least arguably not harmed by a conflict in

collecting a claim if the creditors will be paid 100% in any event (although it might also be argued that successful prosecution of the claim might increase the chances of completion of such a plan). The fact is that there is no 100% plan on file or likely to be proposed in the present case; it appears here that funds paid to Michael Winter will be funds that other creditors would otherwise receive.

*In re OPM Leasing Services, Inc.,* 16 B.R. 932 (Bankr.S.D.N.Y.1982), also cited by Dannen, Crane, is a less easily categorized case. In *OPM,* a trustee and his attorney represented separate, but related Chapter 11 debtors, with some inter-company claims. A Chapter 7 trustee in a related case sought (1) removal of the trustee from all cases and (2) removal of the trustee's attorney from a pending adversary proceeding in which the trustee sought recovery of property on behalf of competing corporate claimants. The court allowed the trustee to remain in office on a number of bases, including the timing of the removal motion and considerations of cost. As to the attorney, the court additionally found no present, actual conflict, but rather a unity of interest and singleness of purpose on the part of the two estates in prevailing in the pending consolidated adversary proceeding. 16 B.R. at 938. Michael Winter is presently in the position of the trustee in *OPM,* managing several competing interests. This court has rejected a motion by the Karbowskis to remove him from that position (by appointing a trustee), and thus, in a sense, has followed the first holding of *OPM.* However, the second holding of *OPM* is inapplicable here, just as is the holding of *Central Ice Cream*—there is no community of interests here with respect to the claims of Michael Winter against Al Gelato, or with respect to his position on the secured claims of the Bank.

The court recognizes the costs involved in requiring separate counsel for a debtor in possession and management. The additional cost might seem unnecessarily burdensome when it is recognized that each attorney will in effect be reporting to the same person—in this case Michael Winter.

However, simply because Michael Winter must balance conflicting interests in determining how to operate Al Gelato, it does not follow that lawyers who represent him must have a similar conflict. An attorney representing only Al Gelato, although reporting to Michael Winter, may be able to focus more clearly on the interests of Al Gelato than would an attorney who also represents Winter's competing interests. Congress was presumably aware of the costs involved in requiring separate representation when the interests of a debtor in possession and its management are adverse. If the costs are too high, it is up to Congress, and not the courts, to make a change.

■ Dannen, Crane will be removed as counsel for Al Gelato, but may continue to represent Winter & Lepp and Michael Winter since it represents no interests adverse to those estates. In addition, a sanction will be imposed for Dannen, Crane's failure to point out the adverse representation as required by Bankruptcy Rule 2014(a). Considerable precedent establishes that nondisclosure of potential conflicts alone justifies the court's exercise of jurisdiction to deny all fees. *In re Roberts,* 75 B.R. 402, 412 (D.Utah 1987); *In re BES Concrete Products, Inc.,* 93 B.R. 228, 237 (Bankr.E.D.Cal. 1988); *In re Sixth Avenue Car Care Center,* 81 B.R. 628, 632 (Bankr.D.Colo.1988); *In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160, 163 (Bankr.D.Ariz.1984). However, there appears to have been no attempt to hide the facts and the court will not impose such a harsh penalty. Accordingly, fees will be reduced by 10%. An order will be entered in accordance with this opinion.