### In re SABRE INTERNATIONAL, INC., Debtor.

### No. 01–04481–M.

United States Bankruptcy Court, N.D. Oklahoma.

Feb. 18, 2003.

Sam Bratton, Tulsa, OK, for Debtor.

**MEMORANDUM OPINION**

TERRENCE L. MICHAEL,
Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion for Approval of Payment of Compensation to Custodian (the "Motion")and the Supplemental Disclosure Regarding Retention of Woodrum, Kemendo & Cuite, P.C. (the "Supplemental Disclosure"), both filed by Sabre International, Inc., Debtor herein ("Sabre" or "Debtor"). A hearing on the Motion and the Supplemental Disclosure

was held on February 6, 2003. Debtor appeared by and through its attorney, Sam G. Bratton II. Also appearing were Paul Thomas on behalf of the Office of the United States Trustee and Ben C. Kemendo ("Kemendo"), President of the Debtor and an officer and shareholder of Woodrum, Kemendo & Cuite, P.C. ("WKC"). At the hearing, the Court received evidence and heard argument from the parties. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52, made applicable to these contested matters by Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b) (West 2003),[1] and venue is proper pursuant to 28 U.S.C.A. § 1409 (West 2003). Reference to the Court of this matter is proper pursuant to 28 U.S.C.A. § 157(a) (West 2003). These are core proceedings as contemplated by 28 U.S.C.A. § 157(b)(2)(A) (West 2003).

### Findings of Fact

Sabre is a corporation with its principal place of business in Tulsa County, Oklahoma. At all times relevant hereto, Sabre has owed Stillwater National Bank & Trust Company ("Bank") in excess of eight million dollars. This debt is secured by blanket liens upon Sabre's equipment, inventory, and all other assets of the company. In addition, the Bank holds a pledge of all of the voting stock of Sabre.

On July 31, 2001, Kemendo was appointed to serve as the receiver for Sabre in an action commenced by the Bank in the District Court in and for Tulsa County, Okla-

homa (the "State Court"). Under the terms of his order of appointment, Kemendo was authorized to take control of the assets of Sabre, continue its business operations, collect the revenues therefrom and report the scope of his efforts to the State Court on a monthly basis. Kemendo was authorized to "engage such persons as [he] deemed appropriate" to assist him in his duties.[2] On the strength of this order, Kemendo hired WKC.

During the period between July 31, 2001, and October 3, 2001, Kemendo and WKC incurred fees and expenses in the performance of Kemendo's duties as receiver. Said fees and expenses totaled $45,969.50. Of these fees, $35,427.00 represents compensation for time spent by Kemendo. The balance of $10,542.50 represents time incurred by other members or employees of WKC, as well as expenses incurred. Under the terms of the arrangement between Kemendo and WKC, all of these sums, when paid, would ultimately be remitted to WKC for distribution to members of WKC under the general terms governing their professional corporation.

On October 3, 2001, Bank, exercising its power under the pledge of the Sabre corporate stock, removed the existing directors of Sabre and named two officers of the Bank to serve as Sabre's board of directors. Those directors then elected Kemendo as the Chief Executive Officer of Sabre, and authorized him to file a petition for relief under Chapter 11 of the United States Bankruptcy Code on its behalf.[3] The petition was filed that same day. Also on that date, Kemendo caused Sabre to transfer $46,000.00 to the trust account of

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2003).

2. *See Sabre Ex. A.*

3. *See Sabre Ex. G.*

WKC.[4] Kemendo neither sought nor obtained the approval of the State Court for this action. Said funds were set aside or "ear marked" for payment of the receiver fees owed to Kemendo (which would be ultimately paid to WKC).

On October 4, 2001, Sabre herein filed an application to employ WKC as accountants for the Debtor in Possession.[5] In support of the application, Debtor offered the affidavit of Kemendo.[6] In said affidavit, Mr. Kemendo affirmatively represented that WKC "is a disinterested person as that term is defined by 11 U.S.C. § 101(14)." However, said affidavit also states that "Mr. Kemendo is the President and Chief Executive Officer of the Debtor." Nowhere in the affidavit did Kemendo disclose the prior employment of WKC to assist Kemendo in the performance of his duties as receiver in the State Court, nor did he disclose the fact that WKC held in its trust account $46,000.00 in funds which were the property of Sabre. On the basis of the affidavit, the Court approved the employment of WKC as accountants for the Debtor.

Sabre filed its schedules and statement of affairs on October 31, 2001.[7] Kemendo was scheduled as a creditor holding an unsecured claim in an unknown amount. The schedules make no mention of the $46,000.00 in the trust account of WKC. However, in the statement of affairs, Debtor discloses the fact that these monies are being held by WKC. Both the schedules and statement of affairs were signed by Kemendo under penalty of perjury on behalf of the Debtor.

Kemendo filed the Motion on December 2, 2002. It was only upon review of the Motion that the Court learned of the alleged outstanding amounts claimed by Kemendo for his services as receiver as well as the monies being held in the WKC trust account. On December 13, 2002, this Court entered its order requiring additional disclosure from WKC. Said disclosure was made on January 3, 2003. In the Supplemental Disclosure, Debtor and WKC advised the Court that:

1. WKC was not a creditor of the Debtor; rather, WKC was a creditor of Kemendo, who was entitled to payment from the Debtor for his services as pre-petition receiver.

2. "Because the $46,000 was not held in a Debtor's account or in an account over which the Debtor had control, but rather was in the hands of a custodian, the amount was not shown as an asset on the Debtor's Schedule B (Personal Property), but was listed as an amount in the hands of a custodian in paragraph 6.b of the Debtor's Statement of Financial Affairs."[8]

3. "In the Affidavit [submitted with the application to employ WKC], Kemendo states that 'neither Affiant nor WKC, nor any employee of WKC holds or maintains any interest adverse to the above estate...' At that time, Mr. Kemendo had a claim of $45,969.50 for his fees and costs as [State Court] Receiver. However, that 'claim' had been paid to Kemendo and he was holding it in trust subject to approval of this Court.... There was no apparent

---

4. The record is unclear as to whether Kemendo took this action in his capacity as receiver or Chief Executive Officer of Sabre.

5. *See Docket No. 11.*

6. *See Docket No. 12.*

7. *See Docket No. 50.*

8. *Supplemental Disclosure,* ¶ 5.

adverse claim to the Estate in that any sums to be paid to Mr. Kemendo had already been paid and reserved and to the extent not authorized would be readily restored to the Estate."[9]

At the hearing, counsel for Sabre admitted that the failure to disclose both the existence of the claim for receiver's fees and the holding of the $46,000.00 in trust at the time WKC sought approval of its employment by this Court was an error. Counsel also stated that the error was an honest mistake made in good faith, and pointed to the fact that all aspects of this transaction were ultimately disclosed to support his position.

On February 6, 2003, this Court held a status hearing with respect to the Sabre case. At that hearing, the Court was advised by counsel for Sabre that reorganization under Chapter 11 of the Bankruptcy Code was unlikely. Counsel further informed the Court that conversion to Chapter 7 or dismissal of this case was its most probable outcome.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

### Conclusions of Law

*The "Disinterestedness" of WKC*

▉ Under § 327 of the Bankruptcy Code,

the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons,* to represent or assist the trustee in carrying out the trustee's duties under this title.[10]

Although the section uses the word "trustee," it is equally applicable to debtors-in-possession in Chapter 11 cases.[11] The Bankruptcy Code definition of a disinterested person includes a person who

does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.[12]

Unless an accountant satisfies all of the tests set forth in this section, he or she is not disinterested, and may not be employed by the bankruptcy estate.[13] This section

has been described as a "catch-all" clause. It appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independence and impartial attitude required by the Code.[14]

Several courts, while not making a direct reference to this provision, have held that

---

9. *Id.,* ¶ 9.

10. § 327(a) (emphasis added).

11. *See* § 1107.

12. § 101(14)(E).

13. *See U.S. Trustee v. Price Waterhouse,* 19 F.3d 138 (3rd Cir.1994).

14. 3 *Collier on Bankruptcy* ¶ 327.04[4][e] at p. 327–42 (Lawrence P. King ed., 15th rev. ed.1999) (footnotes omitted); *see also In re Glenn Electric Sales Corp.,* 99 B.R. 596, 601 (D.N.J.1988) (citing prior edition of *Collier*) (hereafter *"Glenn Electric"*); *In re Roberts,* 46 B.R. 815, 828 n. 26 (Bankr.D.Utah 1985) (same), *aff'd in part, rev'd in part* 75 B.R. 402 (D.Utah 1987).

"a non-disinterested party is one who may have an economic or practical interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival." [15] As one court noted, "[t]he definition of disinterested person promotes the policy that professionals should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate." [16]

In the present case, Kemendo and WKC contend that WKC "is not a creditor of the Debtor." [17] They point to the fact that the State Court appointed Kemendo, and *not* WKC, as a receiver. They also contend that whatever monies are due for the services of Sabre's pre-petition receiver are due to Kemendo, and not to WKC. While this may correctly state the form of the transactions, it does not accurately relay their substance. Even though Kemendo was the named receiver, all compensation which he was to receive for performance of those duties belonged to WKC. WKC is and was the real economic party in interest with respect to all amounts due Kemendo. The situation is no different than where an attorney in a law firm performs services for a particular client. While the attorney's time and talents are billed to the client, payment for those services is ultimately remitted to the firm, for payment of its expenses and distribution to its members. The Court concludes that WKC holds an economic interest adverse to the bankruptcy estate of Sabre. The Court further decides that WKC does not meet the definition of a disinterested person in this case.

Kemendo's conduct prior to the filing of the bankruptcy case reflects the presence of personal interest. By his own admission, immediately prior to the filing of the bankruptcy case, Kemendo caused Sabre to transfer to WKC sufficient sums to pay for his services as pre-petition receiver. This action was not expressly authorized by the State Court. Moreover, there is nothing in the order appointing Kemendo as receiver for Sabre which expressly or implicitly authorized Kemendo to pay himself or his firm (or set aside monies for such a purpose) without court approval. Put simply, as part of his pre-bankruptcy planning for Sabre, Kemendo set aside monies for payment of his (and WKC's) pre-petition claim. This Court cannot help but conclude that Kemendo was trying to serve two masters.

*Inadequate Disclosure*

■ The disclosure obligations of professionals seeking to be employed by a bankruptcy estate are set forth in Bankruptcy Rule 2014(a):

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the

---

**15.** *Glenn Electric, supra,* 99 B.R. at 602 (citation omitted); *see also, Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831, 835–36 (7th Cir.1998); *In re Roberts, supra,* 46 B.R. at 827; *TWI Int'l, Inc., v. Vanguard Oil & Service Co.,* 162 B.R. 672, 674 (S.D.N.Y. 1994) (*citing In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr.D.N.J.1988)).

**16.** *In re Kuykendahl Place Assoc., Ltd.,* 112 B.R. 847, 850 (Bankr.S.D.Tex.1989) (citations omitted); *accord, Winship v. Cook (In re Cook),* 223 B.R. 782, 789 (10th Cir. BAP 1998).

**17.** *Supplemental Disclosure,* ¶ 7.

specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.[18]

This rule is applicable to all professionals employed by a Chapter 11 debtor, including accountants. This Court has previously ruled that

> Counsel for a debtor "has an affirmative duty to disclose *all* its connections with the debtor, including fees paid in the year preceding the bankruptcy filing." *See In re Saturley*, 131 B.R. 509, 516 (Bankr.D.Me.1991) (emphasis in original). "Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient. Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *Id.* at

517 (citations omitted). The information is to be placed in the form required under Bankruptcy Rule 2016(b); a court is not required to look in the statement of affairs or in other pleadings in the case to determine the relationship between debtor and his or her attorney. *See id.; see also In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir.1995) (ordering disgorgement where retainer was disclosed in statement of affairs, but not in Rule 2016 statement); *see also In re Smitty's Truck Stop, Inc.*, 210 B.R. at 849 (same).[19]

The Court hereby expressly extends this ruling to all professionals employed by a bankruptcy estate, including accountants. Many courts have held that failure to comply with this section is cause for denial of an application for employment and/or denial of all fees sought.[20] In addition, a professional's belief that no conflict exists does not justify non-disclosure:

> [T]he requirements of Fed. R. Bankr.P. 2014 are more-encompassing than those governing the disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are "materially adverse," under Rule 2014, "all connections" that are not so remote as to be *de minimus* must be disclosed. Consequently, there is "no merit to the ... argument that [a party] did not have to disclose its connections .. because its attorneys did not feel that a conflict existed." *In re Rusty Jones, Inc.*, 134 B.R. 321, 345 (Bankr. N.D.Ill.1991).[21]

---

18.  FED R. BANKR. P.2014(a) (West 2003).

19.  *In re Woodward*, 229 B.R. 468, 474 (Bankr. N.D.Okla.1999).

20.  *See, e.g., In re Lee*, 94 B.R. 172, 177 (Bankr.C.D.Cal.1988) (allowing retention of counsel but noting that failure to disclose

representation of related parties is cause for denial); *see also In re Leslie Fay Companies*, 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994) (and cases cited therein).

21.  *In re Leslie Fay Companies, supra*, 175 B.R. at 536.

This is very serious business. The disclosures under Rule 2104(a) are *mandatory*. The Court must be able to rely upon the disclosures on their face, without further investigation or review of the file, as it enters orders authorizing the retention of professionals. It is not a "no harm, no foul" area of the law.

All of the parties involved (Kemendo, WKC and counsel for Sabre) admit that the disclosures made by WKC were deficient. Neither WKC nor Kemendo disclosed the fact that Kemendo was a pre-petition creditor of Sabre, and that WKC had a direct pecuniary interest in Kemendo's claim. Both Kemendo and WKC failed to disclose to the Court the fact that WKC held $46,000.00 in estate funds.[22] Under the authorities outlined above, this failure of disclosure is cause to deny any and all compensation to WKC for its post-petition services. At the present time, the Court need not decide this issue, as WKC has as of yet not sought any such compensation from this estate.

*Payment of Kemendo's Fees as Receiver*

The Court declines to authorize any payment to Kemendo at the present time. Kemendo's fees, if ultimately allowed, constitute an administrative priority expense under § 503(b)(3)(E). In the event of conversion of this case to a case under Chapter 7 of the Code, all administrative expenses incurred after conversion have priority over all other administrative expenses, including any fees owed to Kemendo.[23] Counsel for Sabre has indicated that conversion to Chapter 7 is likely. It is impossible at the present time to determine whether any funds will be available for distribution to administrative priority claimants. Accordingly, the Court will neither allow nor authorize the payment of Kemendo's fees at the present time.

### Conclusion

The Motion for Approval of Payment of Compensation to Custodian is denied without prejudice. A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

### JUDGMENT

THIS MATTER comes before the Court pursuant to the Motion for Approval of Payment of Compensation to Custodian and the Supplemental Disclosure Regarding Retention of Woodrum, Kemendo & Cuite, P.C., both filed by Sabre International, Inc., Debtor herein. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Motion for Approval of Payment of Compensation to Custodian filed by Sabre International, Inc., be, and the same hereby is, denied.

---

**22.** The fact that Sabre (under the signature of Kemendo) ultimately disclosed the transfer to WKC when it filed its schedules is of little consequence. Disclosure must be made in the application for employment and in the declarations and affidavits submitted in support of such applications. Any other form of disclosure is meaningless for purposes of § 327 and Bankruptcy Rule 2014.

**23.** *See* § 726(b).