**In re LPN HEALTHCARE FACILITY INC., Debtor.**

No. 09–64850.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 10, 2013.

David M. Whittaker, Laura M. Zaremski, Columbus, OH, for Debtor.

Pamela Arndt, Columbus, OH, Mary Anne Wilsbacher, USDOJ—Office of the U.S. Trustee, Columbus, OH, for U.S. Trustee.

William B. Logan, Jr., Columbus, OH, Trustee.

Frederick M. Luper, Columbus, OH, for Trustee.

*MEMORANDUM OPINION AND ORDER ON COMPENSATION APPLICATION OF SI DIGMAN, LLC AND ORDER VACATING APPOINTMENT (DOCS. NOS. 91 AND 443)*

CHARLES M. CALDWELL, Chief Judge.

This Order addresses a Compensation Application filed by Si Digman, LLC (Movant), and the Objection of the United States Trustee ("UST"). Movant provides accounting services and tax preparation to individuals and small businesses, and requests compensation for accounting services provided to LPN Healthcare Facility Inc. ("Debtor"). Movant seeks $60,285.60, including final allowance of $39,631.70 previously paid. If approved, Movant would receive the net sum of $20,653.90. The UST objects on the basis that the Movant failed to disclose the simultaneous provision of accounting services to individuals and/or entities associated with the Debtor, and that services performed did not benefit the estate. In the alternative, Movant seeks compensation as an administrative expense claimant (11 U.S.C. § 503(a)), which is also opposed by the UST.

The Court has determined that Movant maintained business connections with individuals and entities related to the Debtor, and that there was a failure of timely and accurate disclosure of these relationships. However, Movant may have provided services necessary to the administration of this estate. The Court has concluded that the order retaining Movant must be vacated in view of the failed disclosures, but that the Movant should be granted leave to file an application for administrative expenses once the administration of this estate is complete. A brief history of this case and the details of the Court's disposition follow.

The Debtor operated an 80–bed skilled nursing center in Newark, Ohio. Movant provided accounting services to the Debtor and related individuals and entities for several years prior to the bankruptcy filing. This relationship included payroll, bookkeeping, reconciliation, preparation of Medicaid/Medicare reports and tax returns. On December 21, 2009, the Debtor filed Chapter 11, and was represented by Attorney David M. Whittaker ("Mr. Whittaker") from the law firm of Bricker and

Eckler LLP ("Bricker"). Movant continued to provide accounting services for the Debtor after the Chapter 11 was filed, including the preparation of monthly operating reports. Movant testified, however, that he was not consulted by Debtor's counsel in preparing information for the bankruptcy filing, and indeed was not aware of the bankruptcy until a meeting on January 15, 2010, with the Debtor's principal that was also attended by Mr. Whittaker and Laura Zaremski of the Bricker firm.

Movant testified that that he worked with the Bricker firm on the details of his employment application and affidavit, and that he was told that he would have to be a "disinterested person", disclose any association with the Debtor's managers or owners, and waive his outstanding fees. In contemplation of retention, the Movant indeed waived prepetition fees of $106,970.20, according to his affidavit.

Movant testified that he was provided with court filings to determine his affiliation with any creditors or owners of the Debtor. Mr. Whittaker's firm then prepared the Movant's retention application and affidavit for his review. According to the Movant he did not obtain any advice from other counsel regarding his retention. In the affidavit the Movant disclosed that he provided tax and accounting services to the principal of the Debtor, Michael B. Johnson, Sr. ("Mr. Johnson") and his mother and sole shareholder of the Debtor, Sara Johnson ("Ms. Johnson"). The retention application and affidavit were filed on May 13, 2010, some five months after this case was filed. Based upon the disclosed information, the Movant was appointed as Debtor's Accountant on June 15, 2010 (Doc. No. 91). Movant testified that this was the first time he served as an accountant to a Chapter 11 debtor.

However, at the same time the Movant served as accountant for the Debtor, services continued to be provided to individuals and entities related to the Debtor, including to: (1) Mr. Johnson, who served as the administrator of the Debtor's business and part shareholder of an assisted living facility known as Goosepond Retirement Village ("Goosepond"); (2) Ms. Johnson, the Debtor's sole shareholder and mother of Mr. Johnson; (3) Ms. May M. Ghiloni ("Ms. Ghiloni"), part shareholder of Goosepond, an officer of the Debtor, and the sister of Mr. Johnson; (4) Northtowne, a senior citizen apartment community ("Northtowne"); (5) Mr. John Ghiloni, manager of Northtowne, and the husband of Ms. Ghiloni; and (6) Goosepond.

According to Movant's testimony, Goosepond is an unlicensed assisted living community owned by Mr. Johnson and Ms. Ghiloni. Movant testified that Goosepond received income at the first of the month and would fund the Debtor's payroll. When the Debtor received income on the 15th of each month, it would then repay the loan. Such transactions were listed in the first operating report prepared by the Movant and filed with the Court on February 22, 2010, by Mr. Whittaker (Doc. No. 56). In addition, later operating reports prepared by the Movant and filed by Mr. Whittaker, showed reconciliation details of transactions involving Goosepond and Northtowne. For Northtowne, Movant testified it was not an entity separate from the Debtor, but was a d/b/a of the Debtor that was used by Ms. Johnson to lease 84 apartments for senior housing that were in turn leased to the Debtor commencing in the 1980's. Movant testified that Mr. Ghiloni was Northtowne's principal manager.

Movant testified that he did not disclose in the retention application and affidavit his business relationship with Mr. and Ms. Ghiloni because these individuals were not

managers or owners of the Debtor and were not on the list of creditors. Goosepond was not mentioned on the application to employ because Movant testified that he did not think it had any ownership interest in the Debtor and was also not on the list of creditors. However, the Movant testified that the Bricker firm knew from him, and probably Mr. Johnson, that that he provided services to Mr. and Mrs. Ghiloni and Goosepond. Regarding Northtowne, the Movant testified that it was not included because he was told by Mr. Whittaker it was not related to this case. No testimony was provided by Mr. Whittaker or any member of the Bricker firm on any of these points.

On December 28, 2010, the Court entered an Order approving the sale of substantially all of the Debtor's assets to Autumn Health Care, LLC, and the Debtor ceased operations. For more than a year afterward work on the case centered upon distribution of sale proceeds and the liquidation of related claims; however, during this extended period operating reports were not filed. As a result, on January 4, 2012, the UST filed a Motion to Convert this case to Chapter 7, based upon the lack of filing of operating reports since the December 2010 reporting period and failure to comply with other UST requirements. This dispute was resolved through an Agreed Order entered by the Court on January 26, 2012. The Order set deadlines for the filing of operating reports and an amended chapter 11 plan and disclosure statement.

However, less than a month later, on February 15, 2012, the UST filed an Emergency Motion for the Appointment of a Chapter 11 Trustee. In this Motion it was alleged that the Debtor's principal, Mr. Johnson " ... has been and may continue to be involved in a scheme whereby the funds realized from the sale approved by this Court have been utilized for unauthorized personal purposes, and not for the benefit of the Debtor's creditors. Specifically, the U.S. Trustee believes that over the last year (Mr. Johnson) transferred significant sums of money to a corporation in which (he) is the majority owner ..." A day later, on February 16, 2012, Mr. Whittaker filed the missing operating reports for the months of January 2011 through December 2011, in addition to a report for January 2012.

On February 16, 2012, the Court conducted a hearing on the UST's Emergency Motion, and the Court was advised by Mr. Whittaker that he had discovered a significant insider receivable, a third bank account for the Debtor that had not been designated as a Debtor–in–Possession account, and payments from Debtor's funds to Goosepond and the Debtor's sole shareholder, Ms. Johnson. Mr. Whittaker stated that the lack of financial reporting was due in part to Mr. Johnson's failure to provide information to the Movant, and Movant's lack of familiarity with the bankruptcy process. In addition, Mr. Whittaker stated that his discoveries were based, to some degree, upon a meeting with the Movant and upon bank statements provided by the Movant.

Given this information, the case was converted to Chapter 7 on February 21, 2012. After conversion the Chapter 7 Trustee, William B. Logan, Jr., commenced two related adversary proceedings (12–2471 and 13–2470) that allege negligence and seek to recover asset transfers. The Movant, Debtor's former Counsel, David Whittaker, and the Bricker firm, and individuals and entities related to the Debtor, are all named as defendants. The scope of any harm done to the estate and its creditors will not be known until these adversary proceedings are concluded.

The testimony received to date, however, suggests that all of the individuals and entities mentioned were closely connected by family ties, and that they operated as a single enterprise providing multiple levels of care to the elderly. After appointment as accountant for the Debtor, the Movant continued to provide services for all those involved in the enterprise. In addition, the testimony indicates that there were financial transactions within this enterprise that established debtor/creditor relationships. In his retention affidavit the Movant only disclosed that he provided tax and accounting services to Mr. Johnson and his mother, Ms. Johnson. This disclosure was incomplete. The Court, however, has not been provided any proof that this failure to disclose was intentional or otherwise motivated to harm the estate and its creditors.

Without regard to intent, the United States Bankruptcy Code ("Code") requires that professionals who seek to assist a Chapter 11 debtor satisfy stringent requirements. 11 U.S.C. § 327(a). Professionals must demonstrate that they do not "hold or represent an interest adverse to the estate" and are "disinterested persons." *Id.* The Code defines "disinterested person," as an individual who "is not a creditor, an equity security holder, or an insider", and does not have "an interest materially adverse to the interest of the estate … by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason". 11 U.S.C. § 101(14)(A),(14)(C).

■ Additionally, the Federal Rules of Bankruptcy Procedure require that professionals file applications and affidavits that disclose, among other things, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [and] any other party in interest" Fed. R. Bankr.P.2014(a); *see also* LBR 2014–1(a)–(c). Professionals have a duty to disclose all connections, and cannot "pick and choose" amongst connections, or determine that certain connections are irrelevant or trivial and do not warrant disclosure. *Smith v. Marshall (In re Hot Tin Roof, Inc.)*, 205 B.R. 1000, 1003 (1st Cir. BAP 1997); *In re Sabre International, Inc.*, 289 B.R. 420, 426–27 (Bankr. N.D.Okla.2003). The goal is to provide the Court and the United States Trustee with enough information to decide whether employing the professional is in the best interest of the estate, and failures in disclosure may lead to the vacation of retention orders and the disallowance and/or disgorgement of fees. *In re Liebfried Aviation, Inc.*, 445 B.R. 30, 33–4 (Bankr. D.Mass.2011); *In re Jore Corporation*, 298 B.R. 703, 724–32 (Bankr.D.Mont.2003).

■ In this instance there is a failure of timely and complete disclosure. That remains the case even if it is true that the Movant misunderstood the requirements and/or acted on the advice of Debtor's former counsel, Mr. Whittaker or the Bricker firm. On the other hand, Movant did provide significant service by preparing monthly operating reports that were filed with the Court, and also apparently even assisting Mr. Whittaker in identifying the circumstances that prompted the appointment of a trustee.

■ Given the potential that some of Movant's services may be compensable as administrative expenses, he must demonstrate a direct and substantial benefit to the estate. *Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir.1997). However, it is not possible to determine the value of such services until the administration is complete by the Chapter 7 Trustee. Further, through the litigation of the related adversary proceedings detailed above, the full scope and

significance of the undisclosed connections will be known.

For these reasons, the Court **VACATES** the Order of Employment entered on June 15, 2010 (Doc. No. 91), and **STAYS** the denial and/or disgorgement of compensation until the Chapter 7 Trustee files a final report and account. At that time the Movant is granted leave to file a motion to be paid as an administrative expense claimant in accordance with this decision, and at that juncture the UST and other parties are granted leave to object.

**IT IS SO ORDERED.**