### In re TECHNOLOGY FOR ENERGY CORPORATION, Debtor.

#### Bankruptcy No. 3–85–00455.

United States Bankruptcy Court, E.D. Tennessee.

Aug. 14, 1985.

Bass, Berry & Sims, John H. Bailey, III, Nashville, Tenn., for movant.

Richard A. Sedgley, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Craig J. Donaldson, Knoxville, Tenn., for Creditors' Committee.

## MEMORANDUM AND ORDER

CLIVE W. BARE, Bankruptcy Judge.

### I

On June 26, 1985, the creditors' committee in this chapter 11 case filed an applica-

tion requesting court approval of the employment of the law firm Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, as special counsel to the committee.

According to the application, the creditors' committee believes that First American National Bank of Knoxville (the movant herein) "has engaged in inequitable conduct with regard to the debtor and its other creditors, has unduly interfered in and damaged the business of the debtor, and has received substantial preferences." As disclosed in the application, the Heiskell firm represents two stockholder of the debtor. In that capacity the Heiskell firm has been involved in litigation by at least one such stockholder against First American and, thus, "has engaged in extensive investigation into the relationship between the debtor and First American National Bank of Knoxville." The committee requested approval of the Heiskell firm "as special counsel to its general counsel ... for the specific purpose of continuing to investigate the relationship between the debtor and First American National Bank of Knoxville." Essentially, the committee's retention of the Heiskell firm would be for the purpose of further examining the relationship between First American and the debtor and for pursuing actions against First American for equitable subordination, recovery of alleged preferences, and the recovery of damages for undue influence and control over the debtor.

This court authorized employment of the Heiskell firm as special counsel on June 28, 1985. First American objected thereafter, asserting the employment to be prohibited by § 1103(b) of the Bankruptcy Code.[1] No other creditor has objected to the employment.

### II

Under these facts this court is persuaded that the committee's employment of the

---

1. In addition to the two stockholders identified in the application, First American indicates that its subsequent discovery relative to this motion reveals that the Heiskell firm also represents a third shareholder and a major creditor listed in the debtor's schedules.

Heiskell firm as special counsel is not prohibited by § 1103(b).

Section 1103(b) of the Bankruptcy Code now provides:

An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

11 U.S.C.A. § 1103(b) (West Supp.1985).

■ This court interprets this subsection to mean that the attorney may not represent an adverse interest with respect to the particular services to be performed for the committee by that attorney. Thus, circumstances that might operate to prohibit a firm from serving as general counsel to the committee would not necessarily disqualify the firm from performing a more limited, circumscribed function not entailing a conflict of interest.

In *Fondiller v. Robertson (In re Fondiller)*, 15 B.R. 890 (Bankr. 9th Cir.1981) the court reached a similar conclusion regarding § 327(c) of the Bankruptcy Code.[2] In *Fondiller* the appellate panel held permissible the employment of special counsel to the trustee for the limited purpose of investigating and recovering certain assets even though the counsel continued to represent certain creditors in the case. Recognizing the potential for conflict were an attorney to represent both a creditor and the trustee as *general* counsel, the panel acknowledged that the statute would require the firm to cease representing the creditors if it were to act as general counsel rather than as special counsel to the trustee. 15 B.R. at 892. However, said the court, the same concerns did "not apply to those situations in which an attorney's services are limited to a narrow field for a specific purpose." *Id.* The firm's employment was limited to the search for and recovery of specific assets and the investigation of certain alleged fraudulent conveyances (not involving the firm's creditor clients). To that extent, the estate's interests and the interests of the firm's clients were identical with respect to the firm's duties as special counsel. Thus, the statute did not prohibit the firm's employment "wherein the attorneys represent the trustee in a special limited capacity that presents no conflict of interests between the trustee and the creditor clients of the attorneys." *Id.* *See also In re Iorizzo*, 35 B.R. 465 (Bankr.E.D.N.Y. 1983) (though special counsel represented estates which might have certain interests adverse to each other, interests which were represented as special counsel were interests which estates shared in common to investigate and recover concealed assets and, thus, there was no conflict of interest requiring disqualification).

■ Similarly, in the instant case the interests of the creditors' committee and the Heiskell firm's shareholder and creditor clients are identical with respect to the limited services which the firm is to perform. Clearly, success on any of the three causes of action to be pursued by the firm against First American would redound to the benefit of unsecured creditors and equity security holders alike.

Prior to its amendment in 1984,[3] § 1103(b) may have lent itself to an interpretation absolutely prohibiting dual repre-

**2.** Prior to the 1984 amendments, § 327(c) read as follows:

In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

11 U.S.C.A. § 327(c) (West 1979) (current version at 11 U.S.C.A. § 327(c) (West Supp.1985)).

**3.** Before amendment this subsection read as follows:

A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

11 U.S.C.A. § 1103(b) (West 1979) (current version at 11 U.S.C.A. § 1103(b) (West Supp.1985)).

sentation without regard to the presence or absence of conflicts of interest. *See In re Broadcast Management Corp.,* 36 B.R. 519 (Bankr.S.D. Ohio 1983). However, the "approach of examining the substance of the dual representation, as opposed to merely its existence, has now been confirmed by Congress in disapproving the *per se* rule ...." *In re Lion Capital Group,* 44 B.R. 684, 688 (Bankr.S.D.N.Y.1984) (rejecting per se rule of disqualification for dual representation in case controlled by pre-amendment statute). As the court in *Lion Capital Group* observed (insofar as is relevant to a determination under the amended statute):

> It thus appears ... from the amendment to § 1103(b), that Congress intended substance to prevail over form. Where the representation does not entail an actual or potential conflict of interests or present an appearance of impropriety, § 1103(b) is not to be interpreted to preclude a committee from engaging counsel of its choice and one in whom it has confidence will best serve the interests of the creditors represented by the Committee.

*Lion Capital Group,* 44 B.R. at 689.

This court recognizes that unsecured creditors and equity security holders are separate and distinct classes "possessing variant priorities and interests with respect to their relationship with the debtor." *In re Saxon Industries, Inc.,* 29 B.R. 320, 321 (Bankr.S.D.N.Y.1983) (equity security holders' committee entitled to employ own accounting firm rather than rely exclusively on services of creditors' committee's accountants). *See also In re Charter Co.,* 44 B.R. 256 (Bankr.M.D.Fla.1984) (equity security holder not a "creditor" and not qualified for membership on unsecured creditors' committee). Nonetheless, while the Heiskell firm's shareholder clients and the creditors' committee may in general possess variant interests in this case, their interests respecting the limited function to be performed by the Heiskell firm are not demonstrably adverse. The movant has specifically identified no such actual or potential conflict of interest, emphasizing

rather the general, variant interests of the two groups already noted by the court.

Since the court finds no actual or potential conflict of interest or appearance of impropriety respecting the committee's employment of the Heiskell firm for the specific and limited purposes indicated, the court denies the motion to set aside the order authorizing the firm's employment for those purposes.

IT IS SO ORDERED.