**In re RPC CORPORATION, d/b/a ROPCO, Debtor.**

**NATIONAL WESTMINSTER BANK USA, Appellant,**

v.

**William L. YAEGER, Trustee, Appellee.**

**No. C–89–467–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

March 9, 1990.

USA ("the Bank") of the Order of the United States Bankruptcy Court for the Middle District of North Carolina allowing the retention of the firm of Ross & Hardies as special counsel for William L. Yaeger, the Trustee in bankruptcy for the debtor, RPC Corporation ("RPC"). The appeal arises from the Chapter 7 bankruptcy case of RPC, which commenced with an involuntary petition filed on July 24, 1986. An Order for Relief was entered in that proceeding on August 14, 1986. Since the Order, the majority of RPC's assets have been liquidated and the proceeds distributed to pay administrative and secured claims.

## I. *Factual Background*

RPC was a corporation that manufactured heavy lifting equipment at its factory in Roxboro, North Carolina. In 1983, the Bank made various loans to RPC that were secured by account receivables, general intangibles, inventory, and equipment. The loans were personally guaranteed by Mr. Walter Ross ("Ross"), RPC's chief executive officer.[1]

About two years later, RPC encountered some financial difficulties to the extent that, in 1986, the Internal Revenue Service filed a tax lien against RPC. The Bank declared the loans in default in accordance with the loan agreement, and on June 6, 1986, RPC surrendered its assets for liquidation. On July 24, 1986, several days before the scheduled liquidation sale, three creditors of RPC filed the involuntary bankruptcy proceeding against RPC. The Bankruptcy Court, following an emergency hearing, granted relief from the bankruptcy stay to conduct the liquidation sale.

Donald S. Ingraham, Research Triangle Park, N.C., for appellant.

Helen Davis Chaitman, of Ross & Hardies, Somerset, N.J., for appellee.

William L. Yaeger, pro se.

*Memorandum Opinion*

GORDON, Senior District Judge.

This matter comes before the court on the appeal of National Westminster Bank,

In 1988, the Bank brought suit in the Southern District of New York against Mr. Ross on his personal guaranty obligations to collect the deficiency owed on the RPC loans after liquidation of the collateral. The District Court granted summary judgment in favor of the Bank, but certain of Ross' counterclaims against the Bank are still pending before that court. Ms. Helen

---

1. Walter Ross is in no way related to anyone in the Ross & Hardies law firm.

Davis Chaitman of the firm of Ross & Hardies has represented, and continues to represent, Mr. Ross in that litigation.

Sometime after the litigation in New York began, RPC's Chapter 7 trustee in the bankruptcy proceedings in the Middle District of North Carolina, William Yaeger ("Trustee"), determined that the most valuable asset of the bankruptcy estate was a claim against the Bank. The Trustee asked the law firm of Ross & Hardies to represent the estate because counsel was experienced in lender liability litigation and intimately familiar with the particular facts of the estate's case, which was essentially the same as Mr. Ross' claim against the Bank in the New York litigation. In view of the fact that the Trustee had no funds with which to retain Ross & Hardies, a contingency fee agreement was reached under which Ross & Hardies would receive one-third of any recovery in the estate's favor. Walter Ross agreed to advance all fees and costs incurred by Ross & Hardies in representing the estate in return for the right to be reimbursed by Ross & Hardies for such advances and his own attorneys' fees and costs out of Ross & Hardies' one-third contingency fee.

The Trustee filed an Application to Employ Attorney on February 17, 1989 seeking approval of Ross & Hardies as special counsel to prosecute the alleged claim against the Bank. The Bank objected to the application noting that Ross & Hardies currently and for over two years has represented Mr. Ross in the New York litigation, and that the arrangement poses some potential ethical problems because Mr. Ross claims to be a secured creditor of RPC.[2] No other creditors of the estate objected to the application.

After a hearing on May 16, 1989, the Bankruptcy Judge stated in open court that he was granting the motion of the Trustee approving Ross & Hardies as special counsel. The Bank immediately filed a Notice of Appeal on June 1, 1989. The written Order of the Bankruptcy Judge was filed June 14, 1989.

## II. *Discussion*

### A. *Jurisdictional Issues*

■ In its brief, the Trustee argues that the appeal of the Bankruptcy Court's Order should be dismissed without reaching the merits for various reasons. The Trustee asserts that one reason for dismissal is that the Bank filed its Notice Of Appeal on June 1, 1989 following the "oral order" of the Bankruptcy Judge on May 16, but fourteen days *prior* to the entry of the written order. The Trustee argues that the appeal of June 1 was premature and not valid because only the written order could be appealed. This argument is without merit because early filing of such an appeal is not grounds for dismissal. *See In re Mike*, 796 F.2d 382, 383 (11th Cir.1986); *In re The Brickyard*, 735 F.2d 1154, 1155 (9th Cir. 1984).

■ The Trustee also asserts that the Bankruptcy Court's Order is not final and that the appeal should not be entertained by this court. The source of district court jurisdiction over bankruptcy appeals is 28 U.S.C. § 158(a), which states in relevant part:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a) (1982).

Only final orders are appealable as a matter of right. Although the standard for finality in bankruptcy decisions is relaxed, "the order in this case is not a final order because it does not resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights of even one of the parties." *In re Looney*, 823 F.2d 788, 790 (4th Cir.1987). Several

---

**2.** Ross' security interest was purportedly taken on certain assets of RPC on the same day Ross surrendered RPC's assets to the Bank for default on the loan agreement. The bankruptcy filing occurred only six weeks after Mr. Ross took his alleged security interest.

courts have held that denials of attorney disqualification motions in bankruptcy actions are interlocutory, not final, orders. *See In re Delta Services Industries*, 782 F.2d 1267, 1272 (5th Cir.1986); *In re Continental Investment Corp.*, 637 F.2d 1, 3 (1st Cir.1980); *In re PHM Credit Corp.*, 99 B.R. 762, 765 (E.D.Mich.1989).

Nevertheless, under 28 U.S.C. § 158(a), the district court has discretion to grant leave to appeal from interlocutory bankruptcy orders. *In re Looney*, 823 F.2d at 790. Rule 8003(c) of the Bankruptcy Code permits the district court to treat a notice of appeal as a motion for leave to appeal. This court will accordingly treat the Bank's Notice of Appeal as a motion for leave to appeal. *See In re Jablonski*, 88 B.R. 652, 655 (E.D.Pa.1988); *In re Hebb*, 53 B.R. 1003, 1005 (D.C.Md.1985).

The district court may also properly use its discretion to hear an appeal of an administrative matter. *See In re Duque*, 48 B.R. 965, 968 (S.D.Fla.1984) (holding review proper of order authorizing retention of special counsel to represent debtor in criminal matters). Because the appeal is dispositive of the validity of counsel's employment and no purpose is served in delaying the appeal, the court will exercise its discretion and grant leave to appeal the Bankruptcy Court's Order. *See id.*

### B. *The Merits of the Appeal*

■ The issue before the court on appeal is whether the Bankruptcy Court erred in approving the application of the Trustee to retain as special counsel for a claim against the Bank the same counsel that currently represents Mr. Ross, the former chief executive officer and creditor of the estate. Historically, bankruptcy courts have been accorded a great deal of discretion with regard to fact-intensive matters such as the terms and conditions of the engagement of attorneys. *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987). This is because "[t]he bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *Id.* This case is intertwined with subtle and intricate facts, and the court should accordingly grant a measurable amount of deference to the decision of the Bankruptcy Court. For the following reasons, this court will uphold the Bankruptcy Court in its decision to permit the retention of the Ross & Hardies firm.

Employment of professional persons in a bankruptcy proceeding is governed by 11 U.S.C. § 327(a) which authorizes the trustee, subject to the court's approval, to employ attorneys that do not hold an interest adverse to the estate, and that are disinterested persons. A "disinterested" attorney is defined as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors." 11 U.S.C. § 101(13)(E). Since the term "adverse interest" is not defined, some courts have interpreted it to include possessing or asserting any interest that would lessen the value of the estate or that would create an actual or potential dispute in which the estate is a rival claimant. *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr.D.N.J.1988). Section 327 is intended to prevent even the appearance of a conflict. *Martin*, 817 F.2d at 181–82; *see also* Model Code of Professional Responsibility Canon 9 ("a lawyer should avoid even the appearance of professional impropriety").

At first blush, the arrangement for counsel seems at least suspect given the fact that Ross & Hardies represents both the estate and a creditor of the estate. Nevertheless, "[t]he naked existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant. It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action...." *Martin*, 817 F.2d at 182 (citation omitted). Many courts have held that there is no conflict of interest where counsel represents a creditor of the debtor, but is employed only as special counsel for the estate. *See In re Fondiller*, 15 B.R. 890 (Bankr. 9th Cir.1981) (approving employment of counsel who also represented creditors of the estate to investigate a claim for

fraudulent conveyance of assets); *In re Renninger Mason Contractors, Inc.*, 58 B.R. 516 (Bankr.E.D.Pa.1986) (approving retention of special counsel who also represented creditors of estate to represent trustee in preference claim); *In re Technology for Energy Corp.*, 53 B.R. 32 (Bankr.E.D.Tenn.1985) (approving special counsel who represented stockholders of the debtor to pursue claims against the debtor's former lender); *In re Iorizzo*, 35 B.R. 465 (Bankr.E.D.N.Y.1983) (approving retention of special counsel who represented affiliate debtor estates to investigate and recover assets of the debtors).

In this instance, the firm of Ross & Hardies is acting as special counsel in the estate's lender liability claim against the Bank, and the employment is for the specific and limited purpose of recovering assets for the estate. *See Fondiller*, 15 B.R. at 892. The suit in the bankruptcy court for the Middle District of North Carolina and the suit in the Southern District of New York both involve the same basic issues and are essentially the same claim against the Bank.[3] In this special situation, "the interests of the estate and the firm's clients are identical with respect to the firm's duties as special counsel." *Fondiller*, 15 B.R. at 892; *see Renninger Mason*, 58 B.R. at 518 (interest of creditor and the estate were identical in pursuing preference claim because both would benefit from recovery of funds). Furthermore, Ross & Hardies has already undertaken an extensive investigation concerning the claim against the Bank. Limited retention of the firm would therefore save the estate "the added expense that would be generated by retention of counsel unfamiliar with the facts and proceedings." *Iorizzo*, 35 B.R. at 469 (noting the firm's extensive investigation in assessing the best interest of the estate).

The Bank nonetheless argues that Ross' status as a creditor creates the grave potential for an actual conflict of interest in the event of a recovery by the estate. Given the specific facts of this particular situation, however, the court must disagree.

There are no assets in the debtor's estate to satisfy Mr. Ross' security interest, thus making Ross an unsecured creditor under the Bankruptcy Code. 11 U.S.C. § 506(a). As an unsecured creditor, Ross cannot receive any treatment either more or less favorable than any unsecured creditor, and he will take a pro rata share according to the scheme set forth in 11 U.S.C. § 726(a) and (b). There is therefore no potential for conflict in the event of a recovery.

The Bank also asserts that the estate may have corporate mismanagement and preference claims against Mr. Ross which are not being pursued because of the relationship between Ross and the estate brought about by Ross & Hardies' employment as special counsel. The slight possibility of those claims, however, will not bar the retention of Ross & Hardies for the special purpose of pursuing the claim against the Bank. The Trustee chose not to bring a preference suit well before the Trustee made its Application to Appoint Special Counsel, and the statute of limitations for a preference suit against Ross has already run. Furthermore, prior to the employment of Ross & Hardies, the Trustee investigated all possible claims against Ross and determined the estate had no such claim.

The Bank also points to the potential for a conflict of interest in the event of settlement negotiations in this litigation. The court does not regard the hypothetical potential for settlement in this particular factual situation as fatal to Ross & Hardies appointment inasmuch as the Trustee, an attorney, will control any settlement negotiations.

### III. *Conclusion*

The firm of Ross & Hardies does not hold an interest adverse to the estate by representing the estate as special counsel in its lender liability claim against the Bank. Moreover, the best interests of the estate are served by letting Ross & Hardies pursue the claim. It is therefore concluded that the June 14, 1989 Order of the

---

**3.** Because the claims of Mr. Ross and the trustee involve identical factual issues, Ross & Hardies has moved to consolidate the trustee's case with Ross' case for trial in New York.

Bankruptcy Court granting the Trustee's Application to Appoint Special Counsel is affirmed.