In re NATIONAL CENTURY FINANCIAL ENTERPRISES, INC., an Ohio Corporation, et al., Debtors.

No. 02–65235.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 1, 2003.

---

Dean P. Wyman, Office of the U.S. Trustee, Cleveland, OH, for United States Trustee.

Sam J. Alberts, Washington, DC, Susan L. Rhiel, Columbus, OH, for Great Southeast Community Hospital Corp., Joint Committee of Unsecured Creditors and Creditor Committee.

Leon Friedberg, Columbus, OH, Nancy V. Alquist, Baltimore, MD, Tobey M. Daluz, Wilmington, DE, Vincent J. Marriott, Philadelphia, PA, for Official Unsecured Creditor Committee and Creditor Committee.

Amanda C. Ellis, Worcester, MA, for New England Home Therapies Inc. and Creditor Committee.

## ORDER ON APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER AUTHORIZING THEM TO RETAIN AND EMPLOY GIBBS & BRUNS, L.L.P. AS SPECIAL COUNSEL (Relating to Pleading No. 1177)

DONALD E. CALHOUN, JR., Bankruptcy Judge.

This matter came before the Court for hearing on July 2, 2003, upon the Application of Debtors and Debtors in Possession for an Order Authorizing Them to Retain and Employ Gibbs & Bruns, L.L.P. as Special Counsel ("Retention Application"), the Objection of the United States Trustee to Application of Debtors and Debtors in Possession for an Order Authorizing Them to Retain and Employ Gibbs & Bruns, L.L.P. ("Trustee Objection"), the Objection of Bank One, N.A. Indenture Trustee, to Application of Debtors and Debtors in Possession for an Order Authorizing Them to Retain and Employ Gibbs & Bruns, L.L.P. ("Bank One Objection"), the Official Committee of Unsecured Creditors' Memorandum In Support of Application of Debtors and Debtors–in–Possession for an Order Authorizing Them to Retain and Employ Gibbs & Bruns, L.L.P. as Special Counsel ("Committee Statement"), and Debtors Reply to Objections by Bank One and United States Trustee to Debtors' Application for an Order Authorizing Them to Retain and Employ Gibbs & Bruns, L.L.P.

as Special Litigation Counsel ("Debtors' Reply").[1]

## I. *STATEMENT OF JURISDICTION*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## II. *PROCEDURAL HISTORY*

On November 18, 2002, all of the Debtors other than Allied Medical, Inc. commenced their respective reorganization cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On February 14, 2003, Allied Medical, Inc. also commenced its Chapter 11 case. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only, and are being administered jointly.

The Debtors are continuing in possession of their respective properties and are operating and managing their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The Debtors have represented to this Court that they are conducting a complex liquidation of the assets of the Debtors. It also has been represented that Debtors made up one of the country's largest providers of healthcare accounts receivable financing.

Since their founding in 1991, the Debtors provided financing to healthcare providers, primarily consisting of hospitals, nursing homes, physician groups, and home healthcare agencies (collectively known as "Providers"). The Debtors provided financing by buying discount accounts receivable that were owed to the Providers under third party insurance programs. These third party insurers includ-

ed government-funded programs such as Medicare and Medicaid, Blue Cross and Blue Shield plans, commercial insurers, and managed healthcare organizations. Historically, the Debtors financed their activities primarily through private placement sales of bonds to institutional investors.

Throughout the course of this bankruptcy proceeding, it has been represented that all of the Debtors' outstanding bonds as of the petition date, were issued by Debtors NPF VI, Inc. and NPF XII, Inc. As of the petition date, the aggregate outstanding principal amount of the bonds issued by NPF VI, Inc., the indenture trustee for which is the Chase Manhattan Bank n/k/a JP Morgan Chase & Co. was $924,995,000.00. It also has been represented that the aggregate outstanding principal amount of the bonds issued by NPF XII, Inc., the indenture trustee for which is Bank One, N.A. ("Bank One") was $2,047,500,000.00.

Prior to the bankruptcy filing, Lance K. Poulsen, the former Chairman of the Board of Directors and Chief Executive Officer of National Century Financial Enterprises, Inc., resigned from all of his director and officer positions with the Debtors. Contemporaneously with these resignations, the Debtors retained the professional crisis management firm of Alvarez & Marsal, Inc., to manage the Debtors' operations and restructuring efforts. The Debtors are now before this Court requesting authorization to retain and employ Gibbs & Bruns as special litigation counsel in these Chapter 11 cases pursuant to Section 327 and Section 328 of the Bankruptcy Code.

---

**1.** On July 1, 2003, Ofivalmo Gestion filed his Motion for Leave to File Instanter an Objection to Application of Debtors and Debtors in Possession for an Order Authorizing Them to Retain and Employ Gibbs & Bruns LLP as Special Litigation Counsel. Counsel for Ofivalmo Gestion appeared at the July 2, 2003, hearing and withdrew the Motion for Leave.

Debtors have represented to this Court that they have identified three (3) principal categories of claims and causes of action held by the estate with respect to the events leading up to the Debtors' financial collapse. Those three principal categories are identified as: (1) transfer avoidance claims, (2) breach of duty and fraud claims, and (3) professional malpractice claims.

On December 5, 2002, the United States Trustee ("Trustee") appointed a statutory committee of unsecured creditors in these Chapter 11 cases. That statutory committee was appointed pursuant to 11 U.S.C. § 1102. Subsequently, on January 9, 2003, the Trustee also appointed two official subcommittees. These subcommittees included an Official Subcommittee of NPF VI Noteholders and an Official Subcommittee of NPF XII Noteholders.

Prior to the NPF XII Subcommittee being appointed by the Trustee, there was an NPF XII *ad hoc* committee. According to the representations of counsel, the *ad hoc* committee was formed in October of 2002, and it recognized that litigation counsel would be needed to pursue the claims and causes of action described above. The *ad hoc* committee selected seven litigation firms to interview. Those seven firms were narrowed to four in number. Interviews with those four firms resulted in another law firm being selected. However, in negotiating the fee structure with that law firm, the law firm was only able to accommodate a certain number of noteholder claims. That caused the *ad hoc* committee to conduct a second search for litigation counsel. During the second search, the Gibbs & Bruns firm was found. At that time, a fee structure was negotiated and brought to the Debtors for review.

Through the Retention Application, the Debtors seek to employ Gibbs & Bruns to serve as special litigation counsel. As special litigation counsel, Debtors represent that Gibbs & Bruns will investigate and bring on behalf of the Debtors' estates any claims against third parties that belong to the Debtors' estates, including, without limitation: (1) transfer avoidance causes of action under Chapter 5 of the Bankruptcy Code; and (2) causes of action based on breach of duty, fraud or similar theories against indenture trustees, placement agents, structuring agents, ratings agencies, law firms, accounting firms and their respective affiliates, against Lance Poulsen, Barbara Poulsen, Donald Ayers, Rebecca Parrett, and entities utilized to hold their respective assets, and against the officers and members of the boards of directors of the Debtors, save and except for the following claims (the "Excluded Claims"):

(a) Claims on behalf of one or more of the Debtors against one or more of the other Debtors;

(b) Claims by one or more of the Debtors against the healthcare providers ("Providers") that have or had business relationships with one or more of the Debtors, including those Providers that have filed for bankruptcy and those that have not, which claims arise out of or relate to accounts receivables financing, lease or promissory note arrangements between the Debtors and the Provider;

(c) Claims held by the Providers or their bankruptcy estates, as applicable, against the Providers' respective directors, officers and agents; and

(d) Preference or other Bankruptcy Code avoidance action claims against Credit Suisse First Boston Corporation (or its affiliates) (collectively, "CSFB"), or ING Barings, Inc. (or its affiliates) (collectively, "ING"); *provided, however,* that if these claims have not been resolved to the satisfaction of the Debtors, the

Debtors may engage Gibbs & Bruns to pursue those claims on mutually agreeable terms to be negotiated at a later date, with the terms of any such engagement to be subject to the approval of this Court.

(Retention Application, p. 5). Gibbs & Bruns and Debtors negotiated the terms of the Excluded Claims. Through those negotiations, they determined that Gibbs & Bruns will not serve as special litigation counsel to the Debtors in connection with the above Excluded Claims.

Under the terms of the proposed employment, Gibbs & Bruns and the Debtors have agreed that the Debtors, in consultation with Gibbs & Bruns, shall designate such claims of the Debtors that are within the scope of Gibbs & Bruns' engagement that shall be pursued for purposes of settlement or prosecuted in litigation ("Designated Claims"), provided that (a) Gibbs & Bruns, in consultation with the Debtors, may exercise its reasonable judgment to elect not to pursue or litigate, as applicable, any Designated Claims, and (b) any such election reached by Gibbs & Bruns in the exercise of its reasonable judgment, in consultation with the Debtors, shall not constitute a material breach of the engagement letter or cause for termination of Gibbs & Bruns' engagement. The Debtors and Gibbs & Bruns also have acknowledged that third party claims belonging to the Debtors that are the subject of the law firm's engagement, or the proceeds thereof, may subsequently be assigned as part of a plan of liquidation to a litigation trust or other entity for the benefit of the Debtors' creditors. Such creditors would include, among other creditors, holders of the notes issued by NPF VI and NPF XII. (Retention Application, p. 6).

In the Retention Application and the attached engagement letter, Gibbs & Bruns discloses that it already represents or may in the future represent, certain holders of notes ("Individual Clients") issued by NPF VI and NPF XII in the pursuit of claims owned by the Individual Clients. The pursuit of the claims owned by the Individual Clients, individually, as distinguished from the Debtors, arise from or relate to the collapse of the Debtors. Gibbs & Bruns discloses that the retention of any Individual Clients shall be subject to substantially the same terms and conditions as set forth in the engagement letter with the Debtors.

In the Retention Application, Gibbs & Bruns states that it has not been engaged to represent, and will not agree to represent in the Individual Clients' representations, any of the following parties: CSFB, ING, Bank One, JP Morgan Chase, or any healthcare Provider or its affiliates that have or had a business relationship with one or more of the Debtors. Further, Gibbs & Bruns represents that no Individual Client representation will include any attempt by an Individual Client to assert fraudulent transfer or derivative claims of the Debtors. Gibbs & Bruns represents that the Individual Client representation will include only claims personal to the Individual Clients themselves. (Retention Application, pp. 6–7).

Under the proposed retention, Gibbs & Bruns will be employed on a contingent fee basis. Under the Retention Application and the proposed engagement letter, Gibbs & Bruns would be entitled to fees under a two-pronged structure. The first structure is described as avoidable preference and fraudulent transfer claims other than the Excluded Claims and all claims against Lance Poulsen, Barbara Poulsen, Donald Ayers and Rebecca Parrett and entities utilized to hold their respective assets. In the Retention Application, Gibbs & Bruns states that this category of claims includes: (1) all preference and fraudulent avoidance

claims, other than the Excluded Claims; and (2) all claims against Lance Poulsen, Barbara Poulsen, Donald Ayers and Rebecca Parrett (collectively referred to as "Founders") and any entities utilized by or on behalf of one or more of the Founders primarily to protect or preserve such Founders' assets against claims or causes of action to recover such assets. The proposed fee for this category of claims, according to Gibbs & Bruns, shall be ten percent (10%) of the total net amounts recovered by way of litigation or settlement, determined after reimbursement of the Debtors for all applicable expenses paid to or on behalf of Gibbs & Bruns under the expense reimbursement provisions of the engagement letter, or $50 million, whichever is less. (Retention Application, pp. 8–9).

The second category of claims is described as all other claims belonging to the estates other than the Excluded Claims. This category of claims is described as those encompassed within the special counsel representation other than those described above. The fee for this category of claims, as represented by Gibbs & Bruns, shall be owed separately and in addition to the fee described above and shall be calculated and based on the total net amounts recovered by way of litigation or settlement by the Individual Clients and the Debtors on an aggregate basis, after reimbursement of their respective expenses under the Individual Client engagement agreements and the expense reimbursement provisions of the engagement letter. The leveled fee for this category of claims will be eighteen percent (18%) of the first $100 million of the aggregate net recovery, fifteen percent (15%) of the next $400 million of the aggregate net recovery,

and ten percent (10%) of the portion of the aggregate net recovery in excess of $500 million. For calculation purposes, Net Recoveries, if any, from both the Individual Client representations and Debtors' special counsel representations shall be credited toward the respective tiers in this fee structure. (Retention Application, pp. 9–10).

### III. ARGUMENTS FOR THE PARTIES

Through the Retention Application, the Debtors request approval of the fee structure and the expense reimbursement provisions of the Retention Application and the attached engagement letter. The Debtors request this approval pursuant to Sections 327 and 328 of the Bankruptcy Code. The Debtors represent that they believe that the fee structure is fair and reasonable and should be approved under Section 328 of the Bankruptcy Code. The Debtors further represent that the fee structure is a result of extensive, armslength negotiations among Gibbs & Bruns, the Debtors, and the Debtors' creditor constituencies. (Retention Application, p. 12). The contingency fee structure removes the burden on Debtors of paying substantial hourly fees on a current basis. Further, the Debtors represent that all of Gibbs & Bruns fees and expenses will be subject to approval of the Court upon proper application.

In response to the Retention Application, Bank One and the Trustee make similar arguments against the retention of Gibbs & Bruns.[2] Both argue that in representing both the Individual Clients and the Debtors, Gibbs & Bruns would be asserting an economic interest that gives rise to an actual or potential dispute in which

---

**2.** Bank One is a defendant in a suit brought by certain noteholders who are already represented by Gibbs & Bruns. The suit was filed in the Arizona Superior Court on behalf of one hundred eighty-four (184) plaintiffs.

the estate is a rival claimant. Gibbs & Bruns, as counsel to both the Debtors and the Individual Clients, inherently shows a clearly adverse interest. Bank One and Trustee contend that the proposed engagement letter acknowledges such a conflict. On page 3 of the engagement letter, they argue that the conflict is specifically recognized:

> ...Accordingly, there is the potential that the individual interests of an Estate on a particular issue may not be the same as the interests of the group of Clients as a whole. In that circumstance, the Firm, as counsel for the group, will have to take the position that will be in the best interest of the Clients as a whole. The firm will, at all times, act in the best interest of the Clients as a whole and in keeping with professional responsibilities.

(Engagement Letter, p. 3, paragraph (B)(1)). These parties argue that Gibbs & Bruns cannot exercise independent judgment on behalf of the Debtors while it also represents the noteholders who are in direct competition for the same pot of money. Instead, Bank One and the Trustee argue that Debtors deserve single-minded counsel. The Trustee also argues that the Retention Application fails to provide a mechanism for the Debtors to examine proposed litigation expenses and for retention of local counsel by Gibbs & Bruns. Trustee argues that the Debtors should implement procedures to determine whether specific expenses should be incurred and that local counsel should be employed only with Court approval pursuant to an application to be employed.

In reply, the Debtors argue that Gibbs & Bruns as a firm is a "disinterested person." The firm itself does not represent or hold any adverse interests to the Debtors' estates. The Debtors also argue that an attorney may simultaneously represent both a debtor and a creditor in a Chapter 11 proceeding. So long as there is no actual "conflict of interest" between the two in connection with the simultaneous pursuit of estate claims and creditor's individual claims against the same defendants, dual representation is permissible. Debtors argue that dual representation is permissible in this case because the Debtors and the Individual Clients share an identity of interest in their actions.

Further, Debtors argue that litigation strategy and settlement options are always an issue in multiple co-plaintiff representations. It is perfectly appropriate to agree in advance to solve such disagreements in favor of the group consensus. Settlements will be subject to the prior review of the Court on a motion to compromise. Further, the chief executive officer of the Debtors, not the law firm of Gibbs & Bruns, will be controlling the compromise decisions. Further, Debtors argue that a recovery by an Individual Client noteholder will diminish the noteholder's claim against the estates and recovery for the estates would also be matched by the noteholder's pro rata share of the estates' recovery. Finally, Debtors argue that it was not and is not the intent to allow Gibbs & Bruns control over employment of local counsel without first filing an employment application and gaining Court approval.

The parties have adequately briefed and argued their positions concerning the employment of Gibbs & Bruns as special litigation counsel. The Court is now prepared to make its decision.

## A. *Applicable Statutory Sections*

Section 327(a) of the Bankruptcy Code provides as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auction-

eers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Section 101(14) of the Bankruptcy Code defines a disinterested person as follows:

. . . person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of filing of the petition, a director, officer or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reasons[.]

11 U.S.C. § 101(14).

Section 327(c) of the Bankruptcy Code also provides as follows:

In a case under chapter 7, 12 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

### B. *Legal Analysis*

Section 327 of the Bankruptcy Code " 'serve[s] the important policy of ensuring that all professionals appointed tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.' " *In re Leslie Fay Companies,* 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994) (quoting *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir. 1994)). *See, also In re AroChem Corporation,* 176 F.3d 610, 621 (2nd Cir.1999). In evaluating the proposed retention of a bankruptcy professional, the Court must use its discretion to preserve the objectives of the bankruptcy system. The Court must consider the protection of the estate's interest and its creditors along with the efficient and economical resolution of the bankruptcy. *Id.*

In reviewing the Retention Application and the parties' arguments, the Court cannot find that Gibbs & Bruns as a firm holds an interest adverse to the Debtors' estates. Gibbs & Bruns provided its verified statement setting forth its connections with the Debtors, creditors, parties in interest, and other professionals pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure. Gibbs & Bruns is not a prepetition creditor of Debtors' estates. Pursuant to its disclosures, Gibbs & Bruns does not possess, as a firm, any claims or interests contrary to Debtors' estates.

The next review for the Court has to do with whether Gibbs & Bruns represents an adverse interest to the estate. Gibbs & Bruns' proposed retention involves a dual representation of Debtors and of certain

noteholders who are also creditors of Debtors' estates. This dual representation, in and of itself, is not enough to warrant the disqualification of Gibbs & Bruns. However, the Court must evaluate if Gibbs & Bruns' representation creates "an actual conflict of interest" with respect to matters for which it is being retained. *In re AroChem,* 176 F.3d at 623. *See, also* 11 U.S.C. § 327.

In this case, the scope of Gibbs & Bruns proposed retention has been limited to including the following:

(1) Transfer avoidance causes of action under Chapter 5 of the Bankruptcy Code; and

(2) Causes of action based on breach of duty, fraud or similar theories against indenture trustees, placement agents, structuring agents, ratings agencies, law firms, accounting firms and their respective affiliates, against Lance Poulsen, Barbara Poulsen, Donald Ayers, Rebecca Parrett, and entities utilized to hold their respective assets, and against the officers and members of the boards of directors of the Debtors. Certain exceptions have been provided for and excluded from Gibbs & Bruns' representation. The certain exceptions relate to Credit Suisse First Boston Corporation and/or ING. Gibbs & Bruns will only be able to engage in claims against these excluded entities once terms are negotiated between the Debtors and the law firm, and once Court approval is given.

(Retention Application, pp. 8–9). In this case, it appears that Gibbs & Bruns has made disclosures to both the Debtors and noteholders regarding the terms of engagement and litigation procedures to be used in case of disagreement among the parties. The Debtors, in choosing Gibbs & Bruns, recognizes that this law firm has already begun extensive investigation and analysis of the factual predicates for claims against many of the same third parties against which the Debtors feel they need to take action. The Debtors recognize that they have claims against many of the same third parties based on the very same factual basis. The Debtors recognize that the retention of Gibbs & Bruns would avoid unnecessary duplication of legal services and expenses, hopefully resulting in a recovery for the benefit of the Debtors and Individual Clients.

In reviewing the retention of Gibbs & Bruns, it appears that the interest of the estates and the firm's Individual Clients are identical with respect to the firm's duties as special counsel. The Individual Clients and the Debtors have an identity of interest with respect to the limited matters for which the special counsel is retained. *See, In re RPC Corp.,* 114 B.R. 116, 119 (M.D.N.C.1990). *See, also In re AroChem Corp.,* 176 F.3d at 627. The Court recognizes that the Bank and the Trustee are raising potentials for conflict in the event of recoveries. However, potential for conflict does not warrant the disqualification of Gibbs & Bruns. The Bankruptcy Code contains certain safeguards to protect Debtors' estates when potential conflicts ripen into actual occurrences. Gibbs & Bruns represented to the Court that it recognizes that it will need to take preventative action such as withdraw from the representation of the Debtors if these potential conflicts ripen into actual occurrences and if the firm is placed into a situation raising an issue of undivided loyalty toward the Debtors.

The Court, in reviewing this Retention Application, also recognizes that Debtors are in liquidating mode. The Debtors' actions are strictly scrutinized by the Creditors' Committee and its counsel, the Offi-

cial Subcommittee of NPF VI Noteholders and its counsel, the Official Subcommittee of NPF XII Noteholders and its counsel. The Debtors also are being managed by David Coles of Marsal and Alvarez. All of these reviewing entities and persons support the Debtors' retention of the Gibbs & Bruns firm and recognize that if this Court later perceives a materially adverse interest, it has at its disposal "an armamentarium of permissible remedies, including ... disqualification [and] disallowance of all or some fees." *In re Martin,* 817 F.2d 175, 182–83 (1st Cir.1987) (cited with approval in *In re BH & P,* 949 F.2d 1300, 1313 (3d Cir.1991)). With these safeguards in place pursuant to the Bankruptcy Code and Gibbs & Bruns' definition of its duty to withdraw as counsel, the Court finds that the speculative concerns of the Trustee and Bank One are not sufficient to warrant disqualification of the Debtors' retention of Gibbs & Bruns. *See, In re AroChem,* 176 F.3d at 628.

In reviewing the Retention Application, taking into account the protection of the bankruptcy estates' interests and the creditors; and considering the most efficient, expeditious and economical resolution of the bankruptcy proceedings, the Court finds that the Retention Application should be approved.

## IV. CONCLUSION

Based upon the foregoing, the Court hereby APPROVES the Application of Debtors and Debtors in Possession for an Order Authorizing Them to Retain and Employ Gibbs & Bruns, L.L.P. as Special Counsel.

IT IS SO ORDERED.